**Helen Riddle CRABTREE,
Plaintiff-Appellant,**

**v.**

**·John Mitchell CRABTREE,
Defendant-Appellee.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

March 26, 1986.

Permission to Appeal Denied by
Supreme Court Sept. 8, 1986.

J. Russell Heldman, J.L. Thompson, III, Nashville, for plaintiff-appellant.

Mary Frances Lyle, Nashville, for defendant-appellee.

James L. Curtis, Nashville, for minor child.

## OPINION

CANTRELL, Judge.

This case involves a question of visitation privileges with a minor child amid allegations of sexual abuse by one of the parents and a question of criminal contempt for the refusal to comply with prior visitation orders of the court.

On August 25, 1983, the court below entered an order granting the plaintiff-appellant, Helen R. Crabtree, a divorce and custody of her minor child. The child was at that time nearly six years old. From that point until the proceedings that resulted in this appeal, the parties have engaged in a classic struggle over the question of custody and visitation with the child.

On May 21, 1985, the father, John Mitchell Crabtree, moved for a finding of contempt against the appellant on the ground that she had refused to allow him to visit with the child on May 18, 1985. On June 5, 1985, the court below found the appellant in contempt and conditionally sentenced her to three days in the Davidson County Workhouse. The court set a hearing on June 19, 1985 to hear proof on the appellant's justification for her actions. Between June 5th and June 19th, the appellant filed numerous motions in the court below in which she asked the court to (1) suspend or terminate the visitation privileges of the father, (2) require the father to submit to a full and intensive psychological examination and (3) enjoin the father from making derogatory remarks about the mother, her parents or other family members, the child's teachers, coaches, pediatrician, child psychologist, the child's school or church recreational activities.

After the hearing on June 19 and 20, the court rendered an order on July 11, ordering the appellant to serve the three-day sentence. On the same day the court overruled the appellant's motion to suspend the visitation privileges and to require the father to submit to a psychological examination.

On July 19, 1985, the appellant filed her notice of appeal from the July 11 contempt order; on August 8, 1985, this court granted permission to appeal the order overruling appellant's motions relating to visitation.

Since the contempt matter involves criminal contempt, jurisdiction over which is vested in the Court of Criminal Appeals, T.C.A. § 16-5-108(a)(3), we have transferred that part of the appeal to that court. The Chief Justice has designated the panel

that heard the arguments to dispose of that question also.

The first issue on appeal concerns the Trial Judge's refusal to allow the appellant to submit proof at the June 19th hearing on her justification for failing to comply with the court's visitation order. At the hearing the appellant attempted to relate to the court that she had been told by at least six different witnesses that the appellee had sexually abused the child while the child visited with him pursuant to the original custody order. The court sustained objections to this testimony on the ground that the testimony was hearsay.

We are of the opinion that the court erred in that ruling. First, because the testimony was not hearsay. By definition hearsay is "testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value on the credibility of the out-of-court asserter." *Laird v. State*, 565 S.W.2d 38, 41 (Tenn.Cr. App.1978); *McCormick on Evidence*, § 225 (2d Ed.1972); *Paine, Tennessee Law of Evidence*, § 47 (1974).

■ The question before the court on June 19 was the appellant's justification for refusing the appellee the right to visit with the child as previously ordered by the court. By relating what had been told to her she was not trying to prove the matters contained in the statements; rather, she was attempting to show her state of mind which led her to do the things she did. For this purpose the statements should have been admitted. *Long v. Tomlin*, 22 Tenn. App. 607, 125 S.W.2d 171 (1938). In *Cannon v. Chadwell*, 25 Tenn.App. 42, 150 S.W.2d 710 (1941), this court said, "Where, regardless of the truth or the falsity of a statement, the fact that it has been made is relevant, the hearsay rule does not apply ..."

The statements offered by the appellant were relevant to the appellant's defense to the contempt charge; that is, her bona fide belief that her child would be harmed by compliance with the court order.

■ The contempt of which the appellant was accused is clearly criminal contempt. Criminal contempts are punitive in nature and the purpose of criminal contempt proceedings is to vindicate the authority of the law and the court as an organ of society. *Shiflet v. State*, 217 Tenn. 690, 400 S.W.2d 542 (1966). A civil contempt is one where a person refuses to obey a court order and punishment is inflicted to compel obedience; when the party has obeyed he or she will be discharged. In effect the contemner "carries the keys to the jail in his or her own pocket." *Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966).

Here the court was asked to punish the appellant for failure to comply with the prior orders of the court. The sentence was in no sense conditioned on future performance.

Criminal contempts are also crimes in the ordinary sense of the word, and one charged with criminal contempt is entitled to the constitutional rights which attach to any criminal charge, e.g. the presumption of innocence and the right to require guilt to be shown beyond a reasonable doubt. *Strunk v. Lewis Coal Co.*, 547 S.W.2d 252 (Tenn.Cr.App.1976).

■ The appellee argues that the error under consideration was harmless. Tennessee Rules of Appellate Procedure, Rule 36(b) says that a final judgment shall not be set aside unless, considering the whole record, the error more probably than not affected the judgment.

In this case the Trial Judge was apparently under the impression that he could not consider the evidence offered by the appellant for any purpose. Although it is clear from the record why the appellant thought she should not allow the child alone with the father—even without the excluded evidence—in a matter as serious as contempt the accused should be allowed the "freest opportunity" to establish his or her defense. *Robinson v. Air Draulics Engineering Co.*, 214 Tenn. 30, 377 S.W.2d

908 (1964). Rule 36(b) should be interpreted in light of the fact that personal liberty is at stake. Therefore, we reverse the Trial Judge's sentence of contempt and remand that aspect of the case for further proceedings.

■ In her next issue the appellant asserts that the Trial Judge erred in not interviewing the child outside the presence of the parents or their attorneys.

Before hearing any proof on the appellant's justification for her actions, counsel for the appellant requested the Trial Judge to interview the child in private. The Trial Judge responded that he would interview the child if it were necessary. At the end of the hearing the appellant made the same request. The Trial Judge responded:

> Let the record show that after hearing all of the evidence, the court is of the opinion that it would not be wise to question the child, and I respectfully overrule your motion.

It should be noted that the child was not called as a witness by the appellant. Rather the appellant invited the Trial Judge to interview the child privately with just the court reporter present. After hearing all the proof the Trial Judge refused to accept the invitation.

If the child had been called as a witness by one side or the other, then the Trial Judge would have been called upon to examine the witness to determine if he was competent to testify. *Ball v. State,* 188 Tenn. 255, 219 S.W.2d 166 (1949); *State v. Fears,* 659 S.W.2d 370 (Tenn.Cr.App.1983). Since that was not done the duty to conduct a qualifying examination did not arise. This fact distinguishes this case from *Higgins v. Higgins,* 629 S.W.2d 20 (Tenn.App. 1981).

We are also of the opinion that whether to interview the child was a matter that addressed itself to the discretion of the Trial Judge. Proof in this record shows the child to be a very frightened young man and under severe emotional distress. He had been under the care of a psychiatrist and taking an anti-psychotic drug for many months. The drug had the effect of making him feel like he was being "programmed". In his mind, according to the testimony, everyone could be classified as being on his mother's or his father's side. His answers to questions were colored by his perception of the side the questioner was on. The Trial Judge, after hearing all the proof, had all these facts before him. Under these circumstances we think the Trial Judge was justified in refusing the invitation to question the child.

The appellant's remaining issues concern the action of the Trial Judge in refusing to terminate visitation privileges of the father and in refusing to refer the case to the Tennessee Department of Human Services.

The record in this case presents classic examples of the troublesome questions which the courts must resolve in dealing with the best interests of minor children where the parents act in an irrational manner. On one hand there is proof in this record from which the inference could be drawn that this child told several people that he was being abused by his father; that he hated his father, hated to visit him one day a week; that he wished to kill his father; that he wished his father were dead. On the other hand there is equally strong proof that this child has told other persons that he loves his father and hates his mother; that his grandfather, in whose house he lives, has been guilty of physically abusing him; that the child sees his treatment by a psychiatrist and the administration of the drug he is taking as the way his mother has of controlling him; that he fears his mother and tries to conceal his love for his father from her.

■ Based on this record the Trial Judge refused to terminate the father's visitation privileges with the child. We cannot say that the Trial Judge erred in doing so. While the simple allegation of sexual abuse sets off a strong reaction in each of us and galvanizes our determination to protect the child, the allegation of abuse still must be proved. We recognize that proof in such a case is hard to come by. Acts of sexual abuse are seldom overt-

ly committed. The statements of the child to third persons, offered to prove the misconduct of one of the parents, are generally excluded as hearsay. But, as they relate to the child's state of mind, statements that would ordinarily be excluded may be introduced. *Long v. Tomlin*, 22 Tenn.App. 607, 125 S.W.2d 171 (1938), 31 C.J.S. *Evidence* § 255. And where the child's state of mind shows that he or she has a real fear of one parent based on the real or imagined mistreatment by that parent, that is sufficient to persuade this court to exclude the child from the company of that parent except under proper supervision.

■ We do not find evidence of that state of mind based on this record. Therefore, the issues raised concerning the Trial Judge's ruling on the visitation question are found to be without merit.

The judgment of the court below is reversed in part and affirmed in part and is remanded to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal equally to the parties.

TODD, P.J., and LEWIS, J., concur.