# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **GLORIA E. HILL-EVANS**, | ) | Shelby County Circuit Court |
|  | ) | No. 127514-9 R.D. |
| Plaintiff/Appellee. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9607-CV-00157 |
|  | ) |  |
| **BREDELL MICHAEL EVANS, SR.**, | ) |  |
|  | ) |  |
| Defendant/Appellant. | ) |  |
|  | ) |  |

FILED

**December 9, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

From the Circuit Court of Shelby County at Memphis.
**Honorable George H. Brown, Jr., Judge**


**Jeffrey Jones**, Memphis, Tennessee
Attorney for Defendant/Appellant.


**Mimi Phillips**, PHILLIPS, HOWARD & GRUBB, Memphis, Tennessee
Attorney for Plaintiff/Appellee.


OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Concurs)

In this divorce action brought by Gloria E. Hill-Evans (Mother) against Bredell Michael Evans, Sr. (Father), the trial court awarded custody of the parties' two minor sons to Mother with Father to have reasonable visitation. However, the trial court's decree further provided that visitation be suspended "until both of the parties and the children have completed a counseling program which is satisfactory to the court, and the court has been furnished a report that the counseling course has been successfully completed. When the counseling process has been successfully completed, the court will consider the defendant's visitation rights."

The parties were married in 1981 and separated in November 1993. The children, Bredell Michael Evans, Jr., and Bradley Levon Evans were born April 7, 1987, and April 20, 1988, respectively. At the time of the divorce Mother was living in Memphis and the Father in North Carolina.

Father appeals and presents his issues as follows:

I. Whether the Trial Court erred in failing to consider a form of shared parenting for the parties, given the strong participation of Mr. Evans in the lives of his children.

II. Whether the Trial Court erred in refusing to grant Mr. Evans any access to his children or any visitation until he completed joint counseling.

III. Whether the Trial Court erred in finding Mr. Evans in violation of an injunction against disposition of marital assets.

Our review of the matter is *de novo* on the record with a presumption that the trial court's findings of fact are correct unless the preponderance of the evidence is otherwise. Rule 13(d) T.R.A.P. In a suit for divorce, where custody of minor children is a question, the court may award the care, custody, and control of the minor children to either of the parties or to both in the instance of joint or shared custody, as the welfare and interests of the children may demand. T.C.A. § 36-6-101(a)(1). In the present case, both parties sought custody of the children.

**Custody**

The primary concern of the trial court and of this Court in determining issues of child custody is the best interests and welfare of the child. *Barnhill v. Barnhill*, 826 S.W.2d 443, 453 (Tenn. App. 1991). The courts routinely employ a comparative fitness analysis, whereby the court determines which of two or more available custodians is more fit than others. *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. App. 1983); *Edwards v. Edwards*, 501 S.W.2d 283, 290 (Tenn. App. 1973). Trial courts are vested with wide discretion in matters of child custody and this Court will not interfere except upon a showing of abuse of discretion. *Marmino v. Marmino*, 238 S.W.2d 105, 107 (Tenn. App. 1950). By statute, there is "neither a preference nor a presumption for or against joint legal custody, joint physical custody or sole custody . . . ." Tenn. Code Ann. § 36-6-101(a)(2) (1996). Nevertheless, the practical problems of joint custody have been repeatedly acknowledged by this Court, particularly "where there is hostility and ill will between the parents." *Jones v. Jones*, No. 01-A-01-9601-CV-00038, 1996 WL 512030, at *4 (Tenn. App. Sept. 11, 1996); *see Malone v. Malone*, 842 S.W.2d 621, 623 (Tenn. App. 1992); *Dodd v. Dodd*, 737 S.W.2d 286, 289-90 (Tenn. App. 1987). Joint custody arrangements "depend for their success on a high degree of cooperation between the parents, so it is perhaps not surprising that they should frequently fail." *Jones*, 1996 WL 512030, at *5.

In order for joint custody to work, it has been this Court's experience that it is extremely important that the parents have open lines of communication. It is firmly established in our jurisprudence that, in cases involving the custody of minor children, the best interest of the children is the paramount consideration. However, the best interest of the children is often intertwined with the relationship between the parents when considering joint custody.

The record reveals that the Father at one point went for a period of six weeks without seeing the children. His explanation was that he could not afford the trip to Memphis. He did not attend their baptism or Christmas play. Mother testified that during the period of separation Father physically abused her in the presence of the children. He stopped paying child support for a period of several months. His explanation was that, although he was not paying Mother directly, he was paying other expenses for the children. On another occasion he took the children from Memphis to North Carolina, enrolled them in school there, and refused to tell Mother of their whereabouts. The record discloses that these parents were unable to communicate regarding visitation. This inability to communicate is noted by the trial judge when he made the following comments from the bench:

I mean, you don't have to be Sigmund Freud to conclude that they have communications problems. I mean, if Ms. Evans has to write a letter, these letters as detailed as these are, and still after communicating, as detailed as those letters are, they don't communicate or reach an understanding, then they need some help in communicating.

. . . .

The Court is of the opinion that Ms. Evans has been operating under clouds of second guess and that there ought to be some clear and unequivocal and definitive resolution as to who will direct these children. I believe at this time it ought to be Ms. Evans.

Now, by making that decision in this case, the Court is not suggesting that Mr. Evans is an unfit parent, quite the contrary. I am concluding that these parties at this time not jointly parent. It just has not and it shall not work because Mr. Evans thinks he ought to be running the railroad, and unless I give him the total railroad to run, then it's not going to be. It's just not going to work.

These parties can't agree that today is Thursday.

In granting custody to the Mother, the trial court further provided in the decree that "Ms. Evans is hereby ordered to inform Mr. Evans of all such decisions when they are made, and to make arrangements with the children's school for Mr. Evans to receive all notices normally sent to parents, including but not limited to copies of all report cards, schedule of school events, etc." We believe that the fact the trial court felt it necessary to include this provision in the decree illustrates the court's concern over the parents' lack of communication.

Mr. Evans admitted that, when he enrolled the children in school in North Carolina, he executed a form for the school wherein he stated that the children were removed from Memphis by emergency court order, which was untrue.

The record further reveals that, when the children were returned to Memphis from North Carolina, Mr. Evans rented an apartment, putting the lease, utilities, telephone, and some rented furniture in his name. He then stopped payment for all of the above, forcing his wife and children to vacate the apartment and move into a motel. He then notified the Tennessee Department of Human Services that Ms. Evans was neglecting the children because they were having to sleep on pallets in the motel room.

Mother testified that Father had an overriding belief that doctors are not necessary and that he refused to acknowledge when any of his children have medical needs. As an example Mother

testified that when one of the children was a baby, she noticed that he was holding his arm in an unusual position.  When she asked her husband what had occurred, he said that he had been playing with the child and that he had hurt his arm.  She asked him to accompany the child to the doctor which he refused to do.  She took the child to the hospital and it was determined that his arm was dislocated.  She said that his response was that he wanted to "make a man out of Bredy that I was treating him like a baby . . . ."

After a careful review of this record, we do not find the evidence to preponderate against the trial court's finding that custody of the minor children be awarded to their Mother.

**Contempt**

Mr. Evans was enjoined from:

> Disposing, transferring, encumbering, loaning, transporting, concealing or removing from this jurisdiction or in any way reducing, modifying or compromising the interest of either party in their joint or individual property of any kind, including, but not limited to, bank accounts, stock, jewelry, furniture, automobiles, and real estate, with the exception of reasonable and ordinary monthly payments on joint expenses or joint debts such as house note, rent or utilities, until further orders of this Court to the contrary.

Mr. Evans admitted that he violated the injunction by the following testimony:

> Q.  Okay, and, Mr. Evans, after you were aware of the injunction of the Court on the assets, you, in spite of that, took 10,894 dollars out of your Federal Express retirement fund in March of 1994, didn't you?
>
> A.  That's correct.

Contempt consists of willful disobedience or obstinacy in refusing to obey an order of the court.  Here the appellant was punished for failure to comply with the prior orders of the court, conduct which would constitute criminal contempt.  Criminal contempts are punitive in nature, and the purpose of criminal contempt proceedings is to vindicate the authority of the law and the court as an organ of society.  *Crabtree v. Crabtree*, 716 S.W.2d 923, 925 (Tenn. App. 1986) (citing *Shiflet v. State*, 400 S.W.2d 542 (Tenn. 1966)).  While acknowledging that he violated the court's order,

Mr. Evans contends that he was justified in doing so. This reasoning is relevant to the issue of punishment, and not the issue of contempt. *D v. K*, 917 S.W.2d 682, 685 (Tenn. App. 1995). The trial court sentenced him to two days in jail for contempt but suspended all but four hours.

Mr. Evans argues on appeal that the injunction was not sufficiently specific in terms. We respectfully disagree. The trial court stated:

> I find Mr. Evans in contempt of court for his disobedience of the Court's order enjoining him from the Court's earlier injunction when he withdrew his money from his retirement. The Court is of the opinion that not only did he disobey the Court's order then, he has failed to pay obligations between September '94 and November '95 when he had the ability to do and that his attitude has been generally contemptuous of the Court's orders, but particularly on those two occasions, for the record, the Court is basing his conduct on those occasions as a basis of finding him in contempt.

The trial court's finding of contempt is affirmed.

**Visitation**

Father contends that the trial court erred in suspending his visitation. The decree provides that:

> The Defendant's right to have visitation with the parties' two minor children should be and the same hereby is suspended until both of the parties and the children have completed a counseling program which is satisfactory to the Court, and the Court has been furnished a report that the counseling course has been successfully completed. When the counseling process has been successfully completed, the Court will consider the Defendant's visitation rights.

Subsequent to the entry of the final divorce decree on May 22, 1996, a consent order was entered by the trial court with respect to visitation as follows:

> IT APPEARING TO THE COURT that the Defendant has filed a Petition to establish specific visitation rights with the minor children of the parties; and the parties and their respective counsel believe that the Defendant presently should be allowed specific visitation rights between the dates of December 22, 1996, through January 1, 1997, at his home place in North Carolina; and that the Defendant shall be responsible for all transportation costs attendant to his visitation rights and he shall return the minor children to the Plaintiff on January 1, 1997.

Defendant has completed the parenting classes as required by the Court.

IT IS THEREFORE ORDERED, by consent, that the previous Orders of this Court are modified to allow the Defendant certain holiday visitation privilege with his minor children pending hearing of his temporary visitation Petition, and which said holiday visitation privileges shall consist of visitation rights in North Carolina from December 22, 1996, through January 1, 1997.

In addition, during the presentation of oral argument before this Court, counsel for the appellant announced that the parties had worked out and the trial judge had approved summer visitation of one and one-half months during the summer of 1997, and counsel for the appellee advised the Court that "pursuant to an agreement between the parties and we went to Judge Brown and we said that they had agreed that he could have them for a large part of the summer that he had completed the counseling and so we entered a consent order on that." In view of the above, we believe that it would be proper and in the best interest of the children to remand this matter to the trial court to allow it to reexamine the Father's visitation rights. The judgment of the trial court is in all other respects affirmed. Costs of this appeal are taxed to the appellant for which execution may issue if necessary.

_____
FARMER, J.


_____
HIGHERS, J. (Concurs)


_____
LILLARD, J. (Concurs)