CONNIE LEWIS THOMASSON )
(PAGE), )
)
    Plaintiff/Appellee, )    Appeal No.
)    01-A-01-9706-CV-00273
v. )
)    Coffee Circuit
JOSEPH RICHARD THOMASSON, )    No. 22,238
)
    Defendant/Appellant. )
)

FILED

July 10, 1998

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CIRCUIT COURT FOR COFFEE COUNTY

AT MANCHESTER, TENNESSEE


THE HONORABLE GERALD L. EWELL, SR., JUDGE


W. DAVID KELLEY
Haynes, Hull, Rieder, & Ewell, P.A.
214 North Atlantic Street
Tullahoma, Tennessee  37388

RANDALL W. MORRISON
115 West Lincoln Street
P. O. Box 467
Tullahoma, Tennessee  37388
    ATTORNEYS FOR PLAINTIFF/APPELLEE


ROGER J. BEAN
MARK W. BELL
Henry, McCord, Bean &
 Miller, P.L.L.C.
300 North Jackson Street
P. O. Box 538
Tullahoma, Tennessee  37388
    ATTORNEYS FOR DEFENDANT/APPELLANT


REVERSED AND REMANDED


WILLIAM B. CAIN, JUDGE

# OPINION

Appellant Joseph Richard Thomasson, Jr. appeals a judgment of the trial court holding him to be in criminal contempt for refusal to comply with court ordered visitation relative to his two minor sons and his former wife, appellee Connie Lewis Thomasson.

Because of failure to comply with the safeguards of Rule 42(b) of the Tennessee Rules of Criminal Procedure, the judgment of the trial court must be reversed.

The parties, formerly husband and wife, are the parents of Joseph Richard Thomasson, now seventeen years of age, and Mark Lewis Thomasson, now fifteen years of age.

The parties were divorced December 21, 1988 under a court approved Marital Dissolution Agreement whereby custody of the minor children was vested in the appellee with respect to the school year, with two weekends per month visitation of the children with appellant. This arrangement was reversed in the summer months with appellant having physical custody of the minor children and appellee having visitation every other weekend. The exchange of the children was to take place in Waverly, Tennessee, which is approximately halfway between the home of the appellee in Cordova, Tennessee, and the home of the appellant in Tullahoma, Tennessee.

In March of 1992, the court entered an order granting custody of the two minor children to the appellant, Mrs. Page, with appellee, Dr. Thomasson having the children during the summer. The court then returned custody to Mrs. Page on January 1, 1993.

For the summer of 1995 the children came to stay with their father for summer visitation and Mrs. Page agreed to allow the children to remain with Dr. Thomasson when school started in the fall of 1995. Dr. Thomasson refused to

file a petition for change of custody, so Mrs. Page ultimately filed a petition advising the court of the custody arrangement in November of 1995. One of the purposes of filing this petition was to set up specific visitation privileges for Mrs. Page.

In July of 1996 this petition came on for hearing and resulted in an agreed order entered July 17, 1996, containing in relevant part, the following provisions:

1. Custody of the minor children, JOSEPH RICHARD THOMASSON AND MARK LEWIS THOMASSON, shall be vested jointly in the parties, with the primary physical custody being vested in the Respondent, JOSEPH RICHARD THOMASSON, JR.

2. During the vacation of the children from school in the summer, the children shall reside with the Petitioner, beginning the first Sunday evening after school is out. The Respondent shall have visitation the weekend of Father's Day in June and the first two (2) weeks in July. JOSEPH will be returned to the Respondent in time for band camp and MARK will be returned the Sunday prior to the commencement of Petitioner's in-service.

During the school year, the Petitioner shall have visitation with the minor children every other weekend beginning the second weekend after Mark's return to the Respondent before the start of school. Visitation will commence on Friday afternoon at 7:30 p.m. until 5:00 p.m. on Sunday (6:00 p.m. if the children do not attend school the following Monday). All exchanges will continue to be made in Waverly, both during the school year and during the summer as the parties have previously done. Allowances shall be made for football games at which Joseph plays in the band either by commencing visitation for both children at 10:00 a.m. on Saturday morning or by bringing Joseph to Waverly on Sunday at the time of the exchange when mark is returned so that Joseph may also visit with the Petitioner at that time.

3. The Petitioner shall have visitation from the time the children are out of school for Christmas vacation until 6:00 p.m. on Christmas Day. The [c]hildren shall then be with the Respondent until they return to school.

4. The major holidays of Easter and Thanksgiving shall continue to be alternated. The Petitioner shall have the children for visitation on Mother's Day weekend. The holiday schedule will take precedence over the every other weekend visitation schedule. If a holiday weekend deprives either party of a regularly scheduled weekend, then that

person shall have visitation with the children the following weekend and every other weekend thereafter.

On December 31, 1996, appellee filed her petition seeking to hold the appellant in contempt for refusing to honor the visitation schedule set out in the agreed order entered July 17, 1996.

Appellant answered the petition for contempt by denying the allegations thereof and on June 5, 1997 filed a counter-petition seeking modification of the previous visitation schedule. In this counter-petition appellant alleged:

1. Counter-Petitioner adopts the history of this cause as outlined and described in the Petition as filed herein.

2. Your Counter-Petitioner would show that since the entering of the previous orders of this Court there has been a significant and substantial change of circumstance in that the parties' minor sons to wit: Joseph Richard Thomasson 16 years of age and Mark Lewis Thomasson 14 years of age have established themselves in the "Tullahoma area," [sic] have acquired numerous friends and social relationships, are currently involved in school activities and otherwise and that it is not their desire, nor is it in their manifest best interest, to be required to spend almost all of their school vacation time during the summer months in Memphis, Tennessee with their mother, Counter-Respondent herein.

Your Counter-Petitioner would show that he in no way wishes nor desires to interfere with the visitation as previously ordered by this court and does not discourage visitation between the parties' minor sons and Counter-Respondent. In fact, your Counter-Petitioner would show that he encourages the parties' minor sons to visit with the Counter-Respondent but it is not their desire to spend almost all of their summer vacation with Counter-Respondent in Memphis, Tennessee.

3. Your Counter-Petitioner would show that the parties' minor sons have attempted, over the past several months, to contact Counter-Respondent and express their desire to Counter-Respondent of matters concerning visitation however, on more occasions than most, Counter-Respondent refuses to accept their telephone calls, facsimiles or e-mails. In fact, your Counter-Petitioner would show that the Counter-Respondent has had very little contact with the parties' minor sons over the past several months.

4. Your Counter-Petitioner would show that it

would be in the interest of justice and in the manifest best interest of the parties' minor sons (and the parties' minor sons ar[e] both desirous) and Counter-Petitioner so moves this Honorable Court to allow said minor sons of the parties to testify in the Court's chambers, or otherwise, to express their desires to the Court with absolutely no intention to offend either Counter-Petitioner or Counter-Respondent by expressing their desires toward visitation with Counter-Respondent.

Both the petition and the counter-petition came on for hearing before the trial court and resulted in an opinion and decree of June 20, 1997 whereby the trial court held appellant to be in civil contempt of court, ordered him confined to the Coffee County Jail for a period of ten days, and to pay a $50.00 fine with all but 48 hours of the ten day sentence being suspended, and the appellant ordered to jail for a period of 48 hours, commencing June 27, 1997. Appellant was also ordered to pay attorney's fees to counsel for the appellee.

Reviewing the record leading up to the civil contempt finding of June 20, 1997, it is not difficult to understand why the learned trial judge took a dim view of the conduct of the appellant during the eleven months that elapsed between the agreed order of July 17, 1996 and the hearing in June 1997, which resulted in the finding of civil contempt.

The assertion by the appellant in his counter-petition of June 5, 1997 that: "Your counter-petitioner would show that he in no way wishes nor desires to interfere with the visitation as previously ordered by this court and does not discourage visitation between the parties' minor sons and counter-respondent," is an affront to the court and completely without support in the record.

Far more revealing is the letter written by the appellant to the appellee on October 4, 1996, over two months after the entry of the agreed order. In this letter appellant attempts to obtain through condescension what he should have obtained through judicial process. Says the appellant:

. . . . We have tried to work this out and you continue to be difficult. This can not continue in this manner. The boys need to be able to have a real life. They have sent you their

schedules and you persist in saying that their plans are unimportant. Mark is part of the band program. You have always known that he was in the band. Why is it so difficult for you to accept that he is doing this?... Both boys would like a better visitation situation. Every other weekend is not going to work for them. They have never agreed with that. I realize that you and I agreed to that schedule but they did not and they do not want to be forced to cancel all of their activities just to satisfy our agreement.

They both have serious conflicts with every other weekend. They say it is too far to go that often. They would much prefer being able to have the freedom to be able to call you up and plan visits to suit all of your needs. You have the school schedule and they would like to be able to tell about all of the other things they are doing. You could all then sit down a[n]d plan visits that would be pleasant for all and they would not feel "forced" to visit you.

Flexibility should be applied to visits.... Let's face it, the boys are no longer children. They live a different life than they did two or three years ago. The same rules do not apply to teenagers as they did with 10 and 12 year olds. It would stand to reason that the visitation rules would also have to change.... Can you really say that it is in their best interest to have to give all this up? Don't you want the best for your boys? Of course you do....

I do realize that we signed an agreement for these every other weekend visits. Would you be willing to change that agreement so that the boys will feel like they can have a life? They would prefer an agreement that did not specify certain weekends. How would you feel about that? If the agreement merely stated "liberal visitation". The summer is also going to be an issue. That will need to be changed also. Joseph has already expressed his intent to work this summer. I know you are aware of this as well. He will not be able to live with you the summer months as stated in the agreement. He wants to visit as he can arrange it. Mark of course will not be working but he too has expressed concerns about being away all summer. He is older now and does not want to miss all of his friends. This is another area in which you can not simply reverse what we did in the past. I realize that the boys did come and stay here all summer. They were younger and did not have activities as they do now. Please realize that this has nothing to do with you or me as their parents. They love us equally but we are no longer the center of their lives. This is a normal part of growing up. We would be very foolish to attempt to force them away from their friends and to concentrate on us. This is the time for us to take a back seat and watch and be proud.

. . . .

The foregoing is but a part of the evidence heard by the trial court which led to the June 20, 1997 judgment of the court finding Dr. Thomasson to be in willful civil contempt of the agreed order of the court entered on July 17, 1996. As said by the trial court:

> It can be gleaned from this record by implication on the one hand and on the other hand by statement of the oldest son that their father allowed these children to enroll in programs that he knew would interfere and in effect prevent the implementation of his agreement with his former wife and with the Court. Mrs. Page has accurately stated "I have had to take what I have been given and tried to make it go," and as thanks for her efforts in trying to accommodate these wonderful young men she is in effect cast by defendant Thomasson as the "bad guy" from the very, very first weekend visitation which she did not get. Defendant Thomasson calls Mrs. Page's efforts to be agreeable "on-going negotiations" between her and the children - the Court does not think so. She had to take what she could get, and as stated by one or maybe both of the boys there were times when "we just could not go." They were both wrong - they could have gone and should have gone, and the only impediment to them going was their father's failure and refusal to insist that they do go to visit their mother.

Up to this point, the record in this case amply supports the action of the trial court in finding the appellant to be in civil contempt.

The problem starts with the sentence imposed by the court. The judgment provides:

> Accordingly the court finds that defendant Thomasson is in willful civil contempt of the agreed order entered July 17, 1996 in that he has failed, neglected and willfully refused to comply therewith when he had the ability to do so, and the court holds and finds beyond a reasonable doubt that defendant Thomasson is in contempt of the agreed order of July 17, 1996, and orders that he be incarcerated in the Coffee County Jail for a period of ten (10) days and that appellant pay a fine of fifty dollars ($50.00) together with the costs of this proceeding. All but forty-eight (48) hours of this contempt sentence will be suspended and the defendant Thomasson is ordered to report to the sheriff of Coffee County to begin serving the aforesaid forty-eight (48) hours consecutively at 6:00 p.m. Friday June 27, 1997. (emphasis

added)

If this is indeed a finding of civil contempt it contains no provision whereby the appellant may purge his contempt by compliance with the order.

If the order finding the defendant in contempt ". . . beyond a reasonable doubt . . ." is intended to be criminal contempt then the safeguards of the Tenn. R. of Cr. P. 42(b) must have been accorded to the appellant.

This court has held in a similar context:

> [2]    The contempt of which the appellant was accused is clearly criminal contempt.  Criminal contempts are punitive in nature and the purpose of criminal contempt proceedings is to vindicate the authority of the law and the court as an organ of society.  *Shiflet v. State*, 217 Tenn. 690, 400 S.W.2d 542 (1966).  A civil contempt is one where a person refuses to obey a court order and punishment is inflicted to compel obedience; when the party has obeyed he or she will be discharged.  In effect the contemner "carries the keys to the jail in his or her own pocket." *Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966).

*Crabtree v. Crabtree*, 716 S.W.2d 923, 925 (Tenn. App. 1986).

Following the entry of the June 20, 1997 order, appellant filed his notice of appeal.

On June 26, 1997, without further hearing, the trial court filed its Supplemental Opinion as follows:

> By explanation of the Opinion and Decree entered herein on June 20, 1997, the Court files this Supplemental Opinion to clarify the holding contained in the original document:
> While there is a finding that the defendant Thomasson is in a willful civil contempt of the Agreed Order of July 1996, in that he has failed, neglected and willfully refused to comply therewith when he had the ability to do so, it is deemed pertinent to point out at this point that holding the defendant in civil contempt to require him to comply with something which was time related, concerning which the

-8-

time has already past, is not appropriate. However, in
addition the Court holds the defendant in criminal contempt
by said Opinion and Decree pursuant to Rule 42(b) Tenn. R.
Crim. P. for the "willful disobedience or resistance of any
officer of the said courts, party, juror, witness, or any other
person, to any lawful writ, process, order, rule, decree, or
command of said courts," (sic) T.C.A. 29-2-102(3). Criminal
Contempt "is intended to preserve the power and vindicate
the dignity and authority of the court, and the court as an
organ of society." *Black v. Blount, Supreme Court No. 02-
S01-9604-CV-00044 (Tenn. 1996).* (emphasis added)

The June 20, 1997 order unconditionally incarcerating the appellant
imposes a punishment not available in a civil contempt proceeding.

In the leading case of **State ex rel. Anderson v. Daugherty,** 137 Tenn.
125, 191 S.W. 974 (Tenn. 1917), it is said as to civil contempt proceedings:

To this class of contempt belong such an act as the refusal to
pay alimony, as ordered . . . . If imprisonment be ordered it
is remedial and coercive in character, having a relation to the
compelling of the doing of something by the contemnor
which when done will work his discharge. As has been said,
in such case the one imprisoned "carries the keys to his
prison in his own pocket . . . ." *In Re Nevitt*, 117 Fed. 451, 54
C.C.A. 622.

If the trial court at bar intended the contempt finding to be civil the
unconditional sentence of incarceration must be vacated.

This flaw in the June 20, 1997 order is implicitly recognized by the
Supplemental Opinion entered June 26, 1997 specifically finding that civil
contempt ". . . is not appropriate." In the Supplemental Opinion the trial court
relying on **Black v. Blount**, 938 S.W.2d 394 (Tenn. 1996) converts the finding
of civil contempt into a finding of criminal contempt.

As to criminal contempt the Supreme Court of Tennessee has held:

. . . [T]here are two species of contempt, direct and indirect,
which differ, among other ways in the minimal procedure
that will satisfy the requirements of due process in the case
of each. Direct contempt is based upon acts committed in the

presence of the court, and may be punished summarily. Indirect contempt is based upon acts not committed in the presence of the court, and may be punished only after the offender has been given notice, and the opportunity to respond to the charges at a hearing.

*State v. Maddux*, 571 S.W.2d 819, 821 (Tenn. 1978).

Tennessee Rule of Criminal Procedure 42(a) deals with direct contempt and Rule 42(b) deals with indirect contempt. Since the contempt of the appellant at bar did not occur in the presence of the court the proceedings to impose indirect criminal contempt must comply with Rule 42(b) which provides as follows:

> (b) Disposition upon Notice and Hearing. -- A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the district attorney general or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the hearing except with the defendant's consent. Upon a verdict of finding of guilt the court shall enter an order fixing the punishment.

The petition for contempt filed by the appellee and the procedure followed by the trial court cannot be reconciled with Rule 42(b) of the Tennessee Rules of Criminal Procedure. First of all the petition itself never asserts that the appellee was seeking a criminal contempt holding against the appellant. The most that the petition asks is incarceration but incarceration is compatible with either civil or indirect criminal contempt. The order of June 20, 1997 designates a civil contempt finding but contains language finding the appellant guilty "beyond a reasonable doubt" of contempt and imposing an unconditional sentence of incarceration that is only consistent with criminal contempt. As far as the record before this court discloses, the first notice the appellant had that he

was being charged with criminal contempt came with the supplemental opinion of the trial court on June 26, 1997, a week after all proceedings had been completed.

Adding to the confusion is certain of the language used in the June 26, 1997 order. After holding that the civil contempt requiring the appellant to comply with something which was time related and concerning which the time had already passed was "not appropriate" the trial court went on to say "however, in addition the court holds the defendant in criminal contempt . . . ." (emphasis added).

A finding that civil contempt ". . . is not appropriate" seems incompatible with the ". . . in addition . . ." holding of criminal contempt.

> In summary it may be said:
>
> 1.    The conduct of the appellant as disclosed by this record is unacceptable.
> 2.    If civil contempt was intended by the trial court, unconditional incarceration cannot be imposed.
> 3.    If criminal contempt was intended by the trial court the proceedings below were in violation of the requirements of rule 42(b) of the Tennessee Rules of Criminal Procedure.

The appellant further asserts that the trial court erred in denying the appellant's counter-petition to modify the existing visitation schedule to accommodate the realities of the lives of the parties' sons. In this counter-petition the appellant had asked the trial court to allow the sons of the parties to express their desires regarding visitation and to ". . . . modify the previous orders as entered herein as concerns visitation between the parties' minor sons and counter-respondent as the court deems equitable under the circumstances."

Since the case must be reversed and remanded on the contempt finding, the trial court should be free to address again the merits of the counter-petition in such manner as the trial court deems proper. Indeed, this court is saddened not only by a Father who would claim to advocate a child's interest in a situation

which strongly suggests ulterior motives, but also by individuals who would enter an *agreed* order regarding the visitation and custody of mature minor children without considering the children's best interest and without consulting the children themselves. The part of the order denying the counter-petition will be vacated and the case remanded also as to the counter-petition.

The trial court in the case awarded attorney's fees to the appellee. In view of the reversal of the contempt findings which this court feels is compelled by law, the award of attorney's fees to the appellee is vacated, subject to further consideration by the trial court on remand.

The case is reversed and remanded to the trial court for further proceedings not inconsistent with this opinion.

Acting in its discretion the court taxes all costs of appeal against the appellant, Dr. Joseph Richard Thomasson.

 

 

_____
WILLIAM B. CAIN, JUDGE

 

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE

_____
WILLIAM C. KOCH, JR., JUDGE