RANDALL CRAIG COBB, )
 )
  Plaintiff/Appellant, ) Appeal No.
 ) 01-A-01-9803-CV-00127
v. )
 ) Davidson Circuit
SHARON RUBEN COBB, ) No. 94D-4394
 )
  Defendant/Appellee. )

**FILED**

February 1, 1999

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE

THE HONORABLE MURIEL ROBINSON, JUDGE

THOMAS F. BLOOM
500 Church Street, 5th floor
Nashville, Tennessee 37219
 ATTORNEY FOR PLAINTIFF/APPELLANT

JEANAN MILLS STUART
501 Union Street, Suite 503
Nashville, Tennessee 37219
 ATTORNEY FOR DEFENDANT/APPELLEE

AFFIRMED AS MODIFIED,
AND REMANDED

WILLIAM B. CAIN, JUDGE

# OPINION

In this case Appellant challenges the action of the trial court in denying his application for relief under Rule 60.02 of the Tennessee Rules of Civil Procedure, holding him to be in criminal contempt of court and denying his application for modification of alimony.

On December 22, 1994, Randall Craig Cobb sued Sharon Ruben Cobb for divorce on grounds of irreconcilable differences, cruel and inhuman treatment, and adultery. These parties were married in May, 1986 and separated September 27, 1994. They had no children.

On January 23, 1995, Sharon Cobb answered and counter-claimed charging inappropriate marital conduct, adultery, and abandonment.

Mr. Cobb was a professional boxer and a professional actor holding membership in the Screen Actors Guild through which he was paid for professional acting. The parties arranged for his payments through Screen Actors Guild to be paid to Heavy Weight Titles, Inc., a corporation controlled by Mrs. Cobb.

A pendente lite hearing occurred February 23, 1995, at which husband failed to appear. This hearing resulted in an order commanding that all monies received from Screen Actors Guild since September 23, 1994, be paid to counsel for the plaintiff and held in escrow until use of such funds to prohibit or forestall foreclosure on the marital residence. In this order husband was required to appear on March 2, 1995, to show cause why this order should not be enforced.

Once again husband failed to appear, and on April 19, 1995, his attorney, Honorable Hugh Green, moved to withdraw.

On April 21, 1995, wife filed a petition to hold husband in contempt for failure to comply with orders of the court.

A show cause order was issued on April 27, 1995, ordering husband to appear before the court on May 25.

On May 15, Honorable Hugh Green was allowed to withdraw as counsel for husband.

On June 23, 1995, wife filed a motion to have the contempt petition set for hearing. Husband neither responded nor appeared to answer the petition. At the hearing on June 30, 1995, and by order entered July 7, 1995, the trial court rescheduled a hearing on the show cause order for July 27, 1995. Again, husband failed to appear for the hearing. After the July 27, 1995 hearing, an attachment of the body was issued for husband. On November 6, 1996, wife filed a motion for a default judgment and to set the case for hearing.

On November 15, 1996, husband finally filed an answer to the wife's counter-complaint admitting that he was able-bodied and capable of earning monies to support himself. Husband also filed on November 15, 1996, a response to the motion for attachment.

On January 17, 1997, Honorable L. R. DeMarco filed a motion to be allowed to withdraw as counsel for husband. Hearing was set on January 24, and DeMarco was allowed to withdraw with final hearing being set for February 12, 1997.

On February 12, 1997, husband failed to appear for the final hearing, either in person or by counsel.

At the hearing on February 12 wife was granted a divorce on her cross-complaint based upon a finding of inappropriate marital conduct, adultery, and abandonment. In this final divorce order dated March 4, 1997, the trial court:

a.  awarded the wife one-half of the proceeds of any settlement or damage award arising from the *Sports Illustrated* suit;

b.  awarded the wife all the publishing and 40% of the writer's royalties for the song "She Don't Hold Me Down, She Holds Me Up;"

c. awarded the wife all residuals payable through the Screen Actors Guild to Heavy Weight Titles, Inc.

d. awarded the wife all residuals for a certain movie entitled "Liar, Liar;"

e. awarded the wife alimony for her direct support in an amount of $1,000.00 per month until her death or remarriage;

f. ordered the husband to pay certain delineated credit card debts, and to pay fees to the wife's attorney in the amount of $9,072.10;

g. ordered the husband to maintain and pay the premiums for the wife's health insurance policy under COBRA through the Screen Actors Guild;

h. awarded the wife ½ of the husband's vested pension with the Screen Actors Guild;

i. ordered the wife to be held harmless for all income taxes incurred in the course of the marriage and in particular a 1988 federal tax lien; and,

j. reserved ruling on a pending contempt petition and an attachment, but directed the clerk to enter this order as a final judgment pursuant to Tennessee Rules of Civil Procedure 54.02.

On February 27, 1997, husband filed a motion to vacate the contempt and attachment orders and the final decree of divorce.

After a hearing on March 21, 1997, all of husband's motions were overruled, and on April 3, 1997, a notice of appeal was filed by the husband.

On May 2, 1997, husband filed a motion to reconsider the denial of his motion to vacate the final decree of divorce.

On July 11, 1997, the husband filed a motion to set aside the final judgment pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure.

On July 22, 1997, the trial court entered an order at the request of the husband dismissing his appeal of April 3, 1997.

On July 29, 1997, wife filed a petition to hold husband in criminal

contempt.

On July 30, 1997, the trial court dismissed husband's motion to set aside the final judgment but no order was entered on same until September 4, 1997.

On September 5, 1997, husband answered the petition for criminal contempt and same was set for hearing October 30, 1997.

Following the October 30 hearing the court entered an order on December 11, 1997, finding the husband to be in willful criminal contempt of court and sentencing him to eight consecutive ten day-terms in the Davidson County Jail. On December 19, 1997, husband filed a notice of appeal.

In the post-divorce proceedings husband was represented by Nicholas A. Clemente of the Pennsylvania bar and his present counsel of record, Honorable Thomas F. Bloom, of the Nashville Bar.

The record on appeal consists of two volumes of pleadings, motions and orders of the trial court, and three volumes of testimonial transcript, reflecting hearings on May 2, 1997, July 30, 1997, and October 30, 1997. All of this testimonial record occurs well after the final decree of divorce dated March 4, 1997, and entered after the February 12 hearing. We are favored with neither a testimonial transcript nor a Tennessee Rules of Civil Procedure 24(c) statement of the evidence, reflecting any proceedings prior to May 2, 1997.

> [1] When a trial court decides a case without a jury, it's findings of fact are presumed to be correct unless the evidence in the record preponderates against them. Tenn.R.App.P. 13(d). This court cannot review the facts de novo without an appellate record containing the facts, and therefore, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings. *McDonald v. Onoh,* 772 S.W.2d 913, 914 (Tenn.Ct.App.1989); *Irvin v. City of Clarksville,* 767 S.W.2d 649, 653 (Tenn.Ct.App.1987); G*otten v. Gotten,* 748 S.W.2d 430, 432 (Tenn.Ct.App.1988).

***Sherrod v. Wix***, 849 S.W.2d 780, 783 (Tenn.App.1992).

The first issue on appeal asserted by the appellant is that the trial court erred in failing to set aside the default judgment and final decree pursuant to Rule 60 of the Tennessee Rules of Civil Procedure.

Though Mr. Cobb was present to testify in support of his Rule 60 motion, the trial court held the motion to be defective because it was not accompanied by an affidavit.

The Rule 60 motion does not necessarily have to be accompanied by an affidavit. ***Hopkins v. Hopkins***, 572 S.W.2d 639 (Tenn.1978). The motion itself may explain mistake, inadvertence, surprise or excusable neglect. The difficulty with the position of the appellant is that the only excuse he asserts in the motion is personal poverty prohibiting him from attending previous hearings, a condition apparently alleviated at the time he presented his Rule 60 motion. He makes no assertion by motion, petition, affidavit or otherwise that he has any meritorious defense to the counter-claim.

The Tennessee Supreme Court has held:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:
(1) Mistake, inadvertence, surprise or excusable neglect;...."

[6,7]    When relief is sought under these provisions of the rules, the defendant is invoking equitable principles. Although it is not expressly stipulated in the rules, it is universally recognized that, as a condition to obtaining relief, the defendant, in addition to showing that his default was brought about by mistake, inadvertence or excusable neglect, must also demonstrate that he has a meritorious defense to the plaintiff's claim, except in the case in which the judgment is void. *Seay & Shepherd v. Hughes,* 37 Tenn. 155 (1857); *Hunter v. Sheppard*, 187 Tenn. 99, 213 S.W.2d 19 (1948); *Whitson v. Johnson*, 22 Tenn.App. 427, 123 S.W.2d 1104 (1939); *Aetna Life & Cas. Co. v. Lyon*, Tex.Civ.App., 576 S.W.2d 114 (1978).

[8-10]   We approve the statement of the rule found in

35B C.J.S. *Federal Civil Procedure* § 1131 (1960) as follows:

> "As a general rule, a default or a default judgment will not be set aside at the insistence of the defendant unless he makes a showing of a meritorious defense.
>
> The existence of a meritorious defense is an important consideration in determining whether or not a default or a default judgment entered against defendant should be set aside. As a general rule, a default or a default judgment will not be set aside at the insistence of defendant unless he makes a showing of a meritorious defense. Indeed, setting aside a default judgment without such showing will generally be regarded as an abuse of discretion. However, no showing of a meritorious defense is necessary to support a motion to vacate a void judgment by default.
>
> Where a showing of a meritorious defense is made, the court will ordinarily vacate a default judgment unless there are other circumstances present militating against such action."
>
> The default judgment sought to be set aside in the instant case was not a void judgment; hence, it was incumbent upon the defendant to assert a meritorious defense to the plaintiff's claim as a condition to having the default judgment set aside and permitting a trial on the merits.

*Patterson v. Rockwell Intern.,* 665 S.W.2d 96, 100-101 (Tenn.1984).

In this case the appellant started the divorce proceedings in December, 1994, and ran through at least three lawyers in the course of simply abandoning the proceedings until well after a final decree had been entered. The trial court did not abuse its discretion in denying the Rule 60.02 motion. *Turner v. Turner*, 776 S.W.2d 88 (Tenn.App.1988).

Next, appellant urges that the trial court erred in holding appellant in contempt for failure to discharge certain obligations set forth in the final decree. The primary basis for this assertion is that $39,017.25 of money received by the wife from Screen Actors Guild should have been used to discharge the indebtedness forming the basis of the alleged contempt. If these sums of money were not division of marital property, position of the appellant might be meritorious. This court cannot review the facts upon which the trial court based

its final decree in order to determine how these funds were classified by the trial judge. There is no record of the evidence preserved for review. The following occurred at the October 30, 1997 hearing.

> MR. BLOOM: But in paragraph 4 of this final decree is when they say all residuals will continue to go to Sharon Cobb. That is not property division. You dealt with property division in paragraph 2 and paragraph 3. I think the problem is not here; they've had a bad history of being here. That's my proposition. and the Court was going to maker [sic] sure that she was going to get what she was entitled to in some way.
>
> The Court: No, sir, I have to beg to differ with you. Those residuals were to her. He never came in here and did anything about his lawsuit, and this is a final decree. Those are separate. And in addition, he's to pay a $1,000 a month alimony.
>
> I was here; they were here; he wasn't. I know what I did. so he's -- whatever they're doing, they're going to continue to pay. He owes her $8,000 in alimony as of today. I will hear his petition as to why this alimony should be modified, but that other is a done deal. It's property division and that is it.
>
> Okay. Let me hear the proof. Another shutting the barn door after the horse is out.

Without a testimonial record of the proceedings at the time of the final decree or a Tennessee Rules of Appellate Procedure 24(c) statement of the evidence reflecting such proceedings, we cannot review this post-trial assertion of the trial judge to determine correctness of her statement, but must presume the evidence supported the divorce decree. *Sherrod v. Wix*, supra.

The issue is without merit.

Appellant next complained that the proof did not establish beyond a reasonable doubt that his conduct constituted criminal contempt of the trial court's orders.

After hearing the proof the trial court stated:

> The court finds that he is underemployed; that he has on purpose sought underemployment to avoid payment of the obligations of the final decree. He's never complied with the order. He says that he has income from friends. He pays rent

when he has it. He has an automobile at his disposal. He has food where people feed him. He gets gas. He does everything he wants with the exception of paying his obligations imposed by the court. He's represented by sufficient counsel and always has been since he has elected to participate in the lawsuits.

The Court finds that he designs his own poverty; that he's underemployed by design ...

The above statements on the record resonate within the four corners of the court's December 11 order.

In criminal contempt proceedings the defendant is presumed innocent and his guilt must be established beyond a reasonable doubt. ***Black v. Blount,*** 938 S.W.2d 394, 398 (Tenn.1996).

Appellant does not assail the procedural aspects of the criminal contempt proceeding but insists that the evidence is not sufficient to remove all reasonable doubt. Tenn.R.App.P. 13(e). After reviewing all of the evidence this court concludes that reasonable doubt exists as to whether or not the defendant has rendered himself unable to comply with the orders of the court by deliberate underemployment and poverty by design.

The finding of criminal contempt will therefore be set aside.

Whether the conduct of Mr. Cobb would constitute civil contempt justifying incarceration to compel obedience to a trial court order, under which the condemner "carries the keys to the jail in his or her own pocket", ***Crabtree v. Crabtree***, 716 S.W.2d 923, 925 (Tenn.App.1986), is not a question that is before this court for review.

The last issue for review is the action of the trial court in denying husband's application for a reduction in the $1,000.00 per month alimony provision.

There is no question about the need of Mrs. Cobb for the money. The

sole remaining question is the ability of the obligor spouse to pay. ***Loyd v. Loyd***, 860 S.W.2d 409 (Tenn.App.1993).

The petition for reduction in alimony has been addressed by the trial court only in the context of the criminal contempt proceeding which has been set aside. The merits or demerits of the petition to modify will be remanded to the trial court for further consideration along with any other proceedings the trial court deems necessary consistent with this opinion.

Costs are assessed against Randall Craig Cobb.

_____
WILLIAM B. CAIN, JUDGE


CONCUR:


_____
BEN H. CANTRELL, PRES. JUDGE, M.S.


_____
WILLIAM C. KOCH, JR., JUDGE