IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 2008

IN RE C.C.S.

Appeal from the Circuit Court for Williamson County
No. 06618     R. E. Lee Davies, Judge

No. M2007-00842-COA-R3-JV - Filed December 11, 2008

Mother appeals the Circuit Court's finding her in criminal contempt for violation of a court order and the Circuit Court's total suspension of contact between her and the child. Finding the criminal contempt to be proper, we affirm. Finding the total suspension of mother's visitation was not the least drastic measure available, we reverse and remand for the court to determine whether the prior visitation schedule should be revised.

Tenn R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part,
Reversed in part and Remanded

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, J., joined. PATRICIA J. COTTRELL, P.J., M.S., not participating.

Judy A. Oxford, Franklin, Tennessee, for the appellant, J. T.

Douglas Earl Dimond, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

Robert Harry Plummer, Jr., Franklin, Tennessee, for the appellant, Guardian Ad Litem for Minor Child.

OPINION

This case involves an appeal of a criminal contempt finding against Mother for violating a court order issued during dependency and neglect proceedings and of the trial court's total suspension of Mother's visitation with her child as a result of the contempt finding. We affirm in part and reverse in part.

# STATEMENT OF THE CASE[1]

## I. Procedural History

On July 10, 2006, the Department of Children's Services ("DCS") filed a Petition to Adjudicate Dependency and Neglect in the Juvenile Court of Williamson County against J.T. ("Mother") regarding her minor child. The petition arose from a referral made to DCS on June 30, 2006, which alleged that the child's stepfather, D.T. ("Stepfather"), was sexually abusing the child. On July 10, 2006, the Juvenile Court entered a Protective Custody Order, which gave temporary custody of the child to DCS. On August 28, 2006, another Protective Custody Order was issued granting the same relief. A guardian ad litem ("GAL") was appointed for the child on July 10, 2006.

On July 12, 2006, a preliminary hearing was held and the Juvenile Court entered an Order finding probable cause that the child was dependent and neglected, based on the child's allegations of sexual abuse against Stepfather; the child was placed in DCS's custody. The Order provided that Mother would have visitation rights every Saturday, or as deemed appropriate by DCS or the court; that the child would have no contact with Stepfather pending further court order; and that neither party would discuss the case with the child pending further adjudication by the court. An adjudicatory hearing was set for September 8, 2006.

On August 14, 2006, a Motion to Suspend Visitation with the Mother and for Show Cause was filed by the GAL. The motion sought to suspend Mother's visitation until the investigation by the police into the Stepfather's sexual abuse was completed and a final hearing was held on the matter. The motion also alleged that Mother had discussed the case with the child, accused the child of lying, and attempted to influence the child's testimony. On August 17, 2006, the Juvenile Court entered an Order modifying Mother's visitation to every other weekend, beginning Saturday morning and ending Sunday evening.

On August 18, 2006, Mother filed a Petition for Contempt and Other Relief against the child's biological father, M.S. ("Father"), for allegedly interfering with Mother's visitation on two weekends; the petition sought to limit Father's visitation with the child, to return the child to Mother, and to hold Father in contempt.

On August 21, 2006, an in-chambers conference took place with Referee Sharon Guffee, who entered an Order for the child to begin therapy with a qualified child psychologist or therapist agreed upon by the parents. In addition, Mother's in-person visitation was voluntarily suspended, and all telephone conversations with the child were to be tape recorded.

On September 14, 2006, Father filed his own Petition to Adjudicate Dependency and Neglect; he cited the same allegations made by DCS and requested that the child be placed with him.

---

[1] The Guardian Ad Litem, in his brief, adopted the recitation of the facts set forth in Appellant's brief. The following facts are not in dispute.

On September 20, 2006, Mother filed an Answer to the Petition, which denied DCS's allegations that Stepfather sexually abused the child because he had passed a polygraph where he denied the alleged sexual abuse.

The September 8 adjudicatory hearing was rescheduled and held on September 20, September 27, and October 10, 2006. At the conclusion of the proceedings, the Juvenile Court found that there was no clear and convincing evidence that sexual abuse had occurred; as a result, the court dismissed the two Petitions for Dependency and Neglect, dismissed the Petition for Contempt, and dismissed the case. The court ordered that the child be released from DCS's custody and returned to Mother; however, the court stayed its Order for 10 days to allow DCS to file an appeal to the circuit court.

On October 18, 2006, DCS filed its appeal to the Circuit Court of Williamson County, and on October 19, 2006, the circuit court stayed the juvenile court's order pending the appeal.

On November 3, 2006, Mother filed a Motion to Restore Status Quo Ante Parenting Time, requesting that the original parenting time arrangement, set forth in Mother's and Father's divorce decree, be restored during appeal. Mother also filed a Motion for Telephone Calls, seeking unlimited reasonable telephone calls and access to the child at public events.

On December 19, 2006, Father filed a Motion to Terminate Mother's Telephone Visitation; the motion also sought to suspend Mother's in-person visitation until the final hearing and the conclusion of the police investigation.

On January 3, 2007, the court heard all the motions and entered its order on January 17, 2007 ("January 17 Order"). The court granted Mother's motion to restore status quo, in accordance with the parenting plan approved by the court in Mother's and Father's divorce proceeding, beginning on January 8, 2007. The court also ordered: cooperation and communication between the parents regarding child-related issues; no contact between the child and Stepfather; no discussions, either expressly or by implication, about Stepfather, the allegations of sexual abuse, any issue in the case, or any issue in the police investigation; and no interrogation of the child about her statements, allegations, prior statements that she may have made on any subject, or whether the child loved the parent and wanted the parent in or out of her life. The court required a list of subjects the parents were prohibited from discussing with the child to be placed on both parents' refrigerator.

The section of the January 17 Order pertinent to this appeal is Paragraph 5. The Circuit Court continued the child's therapy sessions, and directed the therapist:

> to report to [the judge] if the minor child reports that either parent or another person has discussed or attempted to discuss or has mentioned any of [the prohibited] subjects or interrogated her in the way forbidden by this paragraph. The Court will punish each violation of this order by ten days confinement in jail for contempt of Court.

On January 26, 2007, the circuit court issued an Order ("January 26 Order") stating that the therapist contacted the court regarding allegations made by the child that Mother violated Paragraph 5 of the January 17 Order. The January 26 Order required Mother to show cause why she should not be held in criminal contempt of court and punished for the violations. A contempt hearing was set for February 6, 2007. On February 1, 2007, Father, the GAL, and DCS filed a Motion to Alter Visitation with Mother.

Following a hearing on February 6, the circuit court found that Mother spoke with the child about prohibited matters, knowing she was not supposed to do so, and that she was in willful criminal contempt of the January 17 Order on two occasions. The court sentenced Mother to 10 days incarceration for each finding of contempt, for a total of 20 days; Mother's contact and communication with the child was suspended pending a final hearing on the case.

Mother filed a Notice of Appeal on April 13, 2007. At the time of the appeal of the circuit court's criminal contempt finding to this Court, the appeal of the juvenile court's judgment to the circuit court had not yet been resolved.

## II. Contempt Hearing

The circuit court's January 17 Order listed the following subjects that the parents were prohibited from discussing with the child:

> [c]ustody or parenting time, the other party, the allegations of sexual abuse made in this case, the truthfulness of legal documents, the videotapes or recordings in this case, any derogatory remarks of any kind about [Step-Father], [Mother], or [Father], or the guardian ad litem Robert Plummer, or has interrogated her about her past truthfulness or untruthfulness or about her feelings for either of her parents with such questions as: "Do you love me?", "Do you want me in (or out of) your life?" and similar questions.

On January 26, 2007, the child's therapist sent a letter to the judge reporting that the child made allegations that Mother violated Paragraph 5 of the court's January 17 Order. The court issued a show cause order against Mother and set the contempt hearing for February 6, 2007. At the hearing, the therapist's letter was ruled hearsay and thus inadmissible; as a result, the minor child was called to testify about the violations.

The child, 12 years old at the time of trial, testified that she set up a "code word" with her therapist if her "mom or dad was talking about [the case],…and [she] didn't want to say it out loud…" in front of her parents. The "code word" was used for no purpose other than to alert the therapist that a parent was talking about the case. The child stated that she sent a text message to her therapist using the code word because her mother started talking about prohibited subjects, including Mother's belief that the child was "told to say that [her] step-dad had done [the sexual abuse]" and Mother's questioning "if [the child] was telling the truth." The child testified that when she told her mother

-4-

that "we can't talk about it," Mother replied that she didn't care "[i]f she goes to jail or if she gets any punishment. She just wanted to talk to [the child] about it." The child stated that Mother eventually stopped talking about the case, but that she resumed talking about the same topics the following night.

Mother defended the allegations by questioning the child's credibility as a witness because of her lapses in memory during the time of the alleged conversations. Mother also asserted that the child may have made up the charges of Mother's violating the Order to get back at her for not letting the child play in a soccer game.

At the conclusion of the hearing, the judge stated that "as I sat here and listened today to the testimony, it really does come down to whether or not I felt like [the child] was truthful. I find she was. There was nothing in her testimony on the relevant issues that gave me reasonable doubt." The court found Mother to be in willful criminal contempt of the court, and was sentenced to 20 days in jail, 10 days for the violation on the first night and 10 days for the violation on the second night. Mother's incarceration was stayed pending appeal. The court also suspended Mother's "contact and communication with the child in any form pending a final hearing on this matter;" this was not stayed pending her appeal.

## STATEMENT OF THE ISSUES

Mother raises two issues on appeal:

1. Whether the circuit court's finding of criminal contempt against Mother should be reversed because the court did not: provide proper notice of the criminal contempt hearing; advise of her constitutional rights; and afford her the constitutional rights of a presumption of innocence and of the burden of proof beyond a reasonable doubt.

2. Whether the circuit court abused its discretion in suspending Mother's contact and communication with the child pending resolution of the matter.

## STANDARD OF REVIEW

We review the trial court's conclusions of law under a *de novo* standard, with no deference to the conclusions made by the lower court. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569-70 (Tenn. 2002); *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). A "review of findings of fact by the trial court in civil actions shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *Kendrick*, 90 S.W.3d at 570.

ANALYSIS

## I. Criminal Contempt Finding

Tenn. Code Ann. § 29-9-102 provides courts with the power to punish a party for contempt of court when the party is in "willful disobedience...to any lawful writ, process, order rule, decree, or command of such courts." Tenn. Code Ann. § 29-9-102(3). Criminal contempt sanctions are punitive in nature, and "preserve the power and vindicate the dignity of the court..." *Robinson v. Air Draulics Eng'g Co.*, 377 S.W.2d 908, 912 (Tenn. 1964); *Long v. McAllister-Long*, 221 S.W.3d 1, 12 (Tenn. Ct. App. 2006). "The matter of determining and dealing with contempts is within the court's sound discretion, subject to the absolute provisions of the law and its determination is final unless there is plain abuse of discretion." *Robinson*, 377 S.W.2d at 912 .

Our Supreme Court described the two types of contempt in *Black v. Blount*, 938 S.W.2d 394 (Tenn. 1996) as follows:

> Civil contempt occurs when a person refuses or fails to comply with a court order and a contempt action is brought to enforce private rights. *Robinson v. Air Draulics Engineering Co.,* 214 Tenn. 30, 37, 377 S.W.2d 908, 911 (1964). If imprisonment is ordered in a civil contempt case, it is remedial and coercive in character, designed to compel the contemnor to comply with the court's order. Compliance will result in immediate release from prison. Therefore, it has often been said that in a civil contempt case, the contemnor "carries the keys to his prison in his own pocket...." *State ex rel. Anderson v. Daugherty,* 137 Tenn. 125, 127, 191 S.W. 974 (1917) (internal citations and quotations omitted); *see also State v. Turner,* 914 S.W.2d 951, 955 (Tenn. Crim. App.1995).
>
> Criminal contempts, on the other hand, are intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society. *Daugherty,* 137 Tenn. at 127, 191 S.W. at 974; *Gunn v. Southern Bell Tel. & Tel. Co.,* 201 Tenn. 38, 41-42, 296 S.W.2d 843, 844-45 (1956). Therefore, sanctions for criminal contempt are generally both punitive and unconditional in nature. *Id.* While criminal contempts may arise in the course of private civil litigation, such proceedings, "in a very true sense raise an issue between the public and the accused." *Daugherty,* 191 S.W. at 974 (internal citations and quotations omitted). In the trial of a criminal contempt case, therefore, guilt of the accused must be established by proof beyond a reasonable doubt. *Robinson,* 377 S.W.2d at 912.

*Black v. Blount,* 938 S.W.2d 394, 398 (Tenn. 1996).

-6-

*Notice of the Hearing*

Mother first asserts that she was not provided proper notice of the criminal contempt hearing because she was not advised of the type of contempt being sought (civil or criminal) and that she was not advised which part of Paragraph 5 she had allegedly violated. We find that Mother received proper notice of the contempt proceedings.

"Unless the contemptuous act was committed in the presence of the court, proceedings for criminal contempt must comply with Tenn. R. Crim. P. 42(b)." *Long*, 221 S.W.3d at 13. This Rule provides:

> (b) Disposition on Notice and Hearing. A criminal contempt shall be prosecuted on notice...
>
> (1) *Content of Notice.* The criminal contempt notice shall:
>
> (A) state the time and place of the hearing;
>
> (B) allow the defendant a reasonable time to prepare a defense; and
>
> (C) state the essential facts constituting the criminal contempt charged and describe it as such.

Tenn. R. Crim. P. 42(b). A defendant facing a criminal contempt charge must be "given explicit notice that they are charged with criminal contempt and must also be informed of the facts giving rise to the charge." *Long*, 221 S.W.3d at 13. "Adequate notice is notice that is clear and unambiguous to the average citizen." *Id.* An individual's conduct can be considered both civil and criminal, so if criminal contempt is sought, notice must "specifically charge a party with criminal contempt." *Id.*

The circuit court's January 26 Order stated that Mother was accused of violating Paragraph 5 of its previous January 17 Order; the letter from the therapist making the accusations was attached to the Order; that Mother was required to "show cause, if any she has, why she should not be held in *criminal* contempt of Court"; and that the contempt hearing would be held on February 6, 2007. This Order provided Mother with the time and place of the contempt hearing, the type of contempt sought, almost two weeks to prepare a defense, and a copy of the exact allegations against her which gave rise to the criminal contempt charge. The information included in this Order satisfies the notice requirements of Tenn. R. Crim. P. 42(b).

Mother argues that the Order only indicates once that the contempt charge is criminal and that the allegations identified in the Order were inadmissible hearsay. Even though the contempt was classified as criminal only once, this was enough to put Mother on notice that this was criminal contempt. In addition, Paragraph 5 of the January 17 Order clearly states that a party will be jailed

for 10 days for any violations, and provides no way for the party to "purge" themselves of the sanction if they are found guilty; this could only mean that any finding of contempt pursuant to that section would be criminal. Lastly, Mother's attorney filed a pre-hearing brief to inform the court that a criminal contempt hearing required a burden of proof that was beyond a reasonable doubt - clearly an indication that Mother was aware she was facing a criminal contempt charge. In regard to the allegations being inadmissible hearsay, there is no requirement that the court's show cause order must comply with the rules of evidence. Rule 42(b) only requires that the essential facts constituting the criminal contempt charge be described. The court's January 26 Order and the therapist's letter satisfy this requirement.

*Notice of Constitutional Rights*

Mother next asserts that she was not given proper notice of the constitutional rights to which she is entitled in a criminal contempt procedure. The rights to which a person accused of criminal contempt are entitled, in addition to notice and opportunity to be heard, include the presumption of innocence, the privilege against self-incrimination and the requirement that guilt be proven beyond a reasonable doubt. *Sanders v. Sanders,* 1997 WL 15228 at *3 (Tenn. Ct. App. Jan. 17, 1997); *see also Crabtree v. Crabtree*, 716 S.W.2d 923 (Tenn. Ct. App. 1986) (holding that "[c]riminal contempts are also crimes in the ordinary sense of the word, and one charged with criminal contempt is entitled to the constitutional rights which attach to any criminal charge..." 716 S.W.2d at 925). As stated earlier, we find that the notice requirements of Rule 42(b) were met. In addition, a review of the hearing confirms that Mother was given notice of the presumption of innocence, her privilege against self-incrimination and that her guilt must be established beyond a reasonable doubt.

At the hearing Mother's counsel provided the court with a memorandum in which he acknowledged that the burden of proof was beyond a reasonable doubt. He also stated the following:

> This is a criminal case, and it is true that there are certain aspects of criminal contempt which, in the words of the Tennessee Supreme Court, are not criminal - they're more civil - and one of those would be no jury trial. But for the basic trial procedures, such as the burden of proof, such as the presumption of innocence, and such as the right of confrontation, [Mother] gets all the benefits she would get in a criminal proceeding. . . .
> We don't have to prove anything, but we are going to.

From the foregoing, it is clear that Mother was well-advised of the constitutional rights to which she was entitled and was ably represented by counsel. The purpose of giving notice of rights was accomplished, as acknowledged by her counsel.

*Application of Constitutional Rights*

A defendant in a criminal contempt proceeding is entitled to be presumed innocent, until found guilty beyond a reasonable doubt. *Robinson*, 377 S.W.2d at 912; *Long*, 221 S.W.3d at 13.

Mother asserts that the court did not afford her either the presumption of innocence or that her guilt be established beyond a reasonable doubt, relying on the court's statements that:

> [Mother] is in a precarious situation, really, because if, in fact, the child makes something up to get back at her mom, you know, it just says she violated the order, [Mother] is the one who will have to pay for that. That's just the way it is. But I assume she's willing to take that risk. If not, then maybe she'd better tell me.

Mother argues that this statement reveals that the circuit court had predetermined to believe whatever the child said, and therefore, she was not afforded the presumption of innocence or the burden of proof beyond a reasonable doubt in her defense of the contempt charge.

At the contempt hearing on February 6, 2007, following proof on the issue, the court stated that "it really does come down to whether or not I felt like [the child] was truthful. I find she was. There was nothing in her testimony on the relevant issues that gave me reasonable doubt." The court's order finding Mother in contempt stated that:

> The parties agreed that the burden of proof was "beyond a reasonable doubt" due to the nature of the criminal contempt issue. After hearing testimony from the mother and the minor child, argument of counsel and the record as a whole, the Court finds that the minor child is credible and has been truthful on all relevant issues and that the mother, by her own testimony, was aware of the Court's prohibition regarding speaking to the child about the issues in this case. The Court finds that the mother knew that she should not speak to the child about the prohibited matters, but did so anyway...The Court finds beyond a reasonable doubt that the mother...is in willful criminal contempt of the Orders of this Court...

The trial court then sentenced Mother to 20 days in jail.

Because the trial court observes the witnesses as they testify, it is in the best position to assess witness credibility. *Frazier v. Frazier*, No. W2007-00039-COA-R3-CV, 2007 WL 2416098, *2 (Tenn. Ct. App. Aug. 27, 2007) (citing *Wells v. Tenn. Bd. Of Regents*, 9 S.W.3d 779,783 (Tenn. 1999)). Therefore, we give great deference to the court's determinations on matters of witness credibility. *Id*. "Accordingly, we will not reevaluate a trial judge's credibility determinations unless they are contradicted by clear and convincing evidence." *Id*.

The trial court clearly and unambiguously stated at the contempt hearing and in its Order that it found Mother guilty beyond a reasonable doubt. The record shows that the court did not blindly accept the child's accusations as true, with no credibility determination, as Mother suggested; rather, the court made a finding that the child was truthful and credible, and that Mother was in willful violation of its Order. We find that Mother was afforded the presumption of innocence and proof of guilt beyond a reasonable doubt, and that there is sufficient evidence in the record to support her conviction.

## II. Suspension of Contact with the Child

Mother also contends that the circuit court's decision to totally suspend contact between her and the child was an abuse of its discretion. The contact was suspended following the court's finding that Mother was guilty of criminal contempt for violating a court order which prohibited Mother from speaking with the child about the case. We agree that suspension of Mother's contact with the child was error.

The trial court has discretion in determining custody and visitation between parents and minor children, and the decision of the trial court will not ordinarily be reversed absent some abuse of that discretion. *See Bueno v. Todd*, No. W2005-02164-COA-R3-CV, 2006 WL 2106006, at *5 (Tenn. Ct. App. July 31, 2006). "The courts may restrict, suspend, or terminate visitation rights upon the presentation of clear and definite evidence that permitting continued visitation will jeopardize the child physically, emotionally, or morally." *Id.* There is a presumption against severely circumscribing or denying visitation to non-custodial parents and, if used, the least drastic measure that is available and workable as a practical matter should be employed. *See id.* at *6.

The Tennessee Supreme Court addressed the issue of reviewing a visitation order for an abuse of discretion by the trial court in *Eldridge v. Eldridge*, 42 S.W.3d 82 (Tenn. 2001) stating that:

> In reviewing the trial court's visitation order for an abuse of discretion, the child's welfare is given "paramount consideration," and "the right of the noncustodial parent to reasonable visitation is clearly favored." Nevertheless, the noncustodial parent's visitation "may be limited, or eliminated, if there is definite evidence that to permit ... the right would jeopardize the child, in either a physical or moral sense."
>
> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (internal quotations omitted).

The order of the trial court suspending contact between Mother and the child does not contain the factual basis for the ruling; neither does it show in what way suspension of contact was in the best interest of the child, consequently, on the record before us, the court's suspension of all contact between Mother and the child is not justified. While we do not condone Mother's behavior in violating the court's order, that violation, standing alone, is not sufficient to order all contact with the child be suspended. There is no proof in this record that Mother's conduct endangered the child's welfare, physically or emotionally, to the point where the presumption against denying her visitation rights was overcome. As is clear from *Eldridge, supra,* the court must balance the right

-10-

of Mother to visitation with the best interest of the child, as well as consider less restrictive alternatives.

Accordingly, the case will be remanded for a determination of whether, and to what extent, the court's prior order setting Mother's visitation should be modified.

## CONCLUSION

For the reasons set forth above, the decision of the Circuit Court is REVERSED IN PART AND AFFIRMED IN PART and the case is REMANDED for further proceedings in accordance with this opinion. Costs are assessed against Mother, for which execution may issue if necessary.

_____
RICHARD H. DINKINS, JUDGE