IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2011 Session

## TRACY ROSE BAKER v. JEFFREY D. BAKER

**Appeal from the Chancery Court for Sumner County**
**No. 2008D412     Carol Soloman, Judge, by Designation**

---

**No. M2010-01806-COA-R3-CV - Filed March 9, 2012**

---

In this post-divorce dispute, the mother of the parties' children appeals from an August 2010 order wherein the trial court revoked her probation for eighteen counts of criminal contempt and imposed the maximum sentence of 180 days. Pursuant to an April 2010 Agreed Order, Mother pled guilty to eighteen counts of criminal contempt and was sentenced to 180 days in jail; however, the entire sentence was suspended and she was placed on probation subject to revocation should she fail to comply with a plethora of conditions of probation. In July 2010, Father filed a Petition to revoke Mother's probation. Following a hearing, the trial court found Mother in violation of her probation and ordered her to serve 180 days in jail. Mother appealed alleging that the Agreed Guilty Plea Order is void because the trial judge failed to conduct a hearing before accepting the guilty plea as required by *Boykin v. Alabama*, 395 U.S. 239 (1969) and Tennessee Rule of Criminal Procedure 11(b). This is not a direct appeal of the Agreed Guilty Plea Order, but a collateral attack of that order and, although this modest record suggests that the trial court may not have engaged Mother with the in-person colloquy required by *Boykin* and Rule 11(b), the record fails to establish that important fact. Thus, the Agreed Guilty Plea Order is not void on its face. However, the August order, specifically the reasonableness of the sentence of 180 days in confinement for violating terms of probation, is on direct appeal. Considering the unique facts of this case, we find an effective sentence of 180 days is clearly excessive in relation to Mother's acts and omissions while on probation and modify the sentence to provide for a total period of confinement of thirty (30) days.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed and Modified in Part, and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which RICHARD H. DINKINS, J., joined. PATRICIA J. COTTRELL, P.J., M.S., filed a concurring opinion.

William Caldwell Hancock, Nashville, Tennessee, for the appellant, Tracy Rose Baker.

D. Scott Parsley and Michael K. Parsley, Nashville, Tennessee, for the appellee, Jeffrey D. Baker.

## OPINION

This appeal arises from protracted and extremely contentious post-divorce proceedings between a divorced couple who have minor children. The appellant, Tracy Rose Baker ("Mother"), and the appellee, Jeffrey D. Baker ("Father"), were divorced by entry of a Final Decree on January 12, 2009. At the time of the divorce, Mother was named the primary residential parent of the three minor children and Father was granted parenting time every other weekend and every Wednesday evening plus additional parenting time during the summer and holidays. Mother was granted the exclusive right to live in the marital residence until she died, remarried, or co-habitated with a male, or until December 1, 2019, at which time the residence would be sold, with the proceeds divided equally between the parties.

Three months later, on April 9, 2009, Father filed a Petition for Order of Protection alleging that he was receiving multiple phone calls and text messages per day from Mother, that she made threats against him and his girlfriend, and that Mother was interfering with his parenting time. An ex parte order of protection was issued by the trial court on that same day. A hearing occurred on the petition on April 23, 2009, at which time the trial court issued a permanent injunction. The order, entered on May 22, 2009, restrained Mother from any contact with Father by "phone, e-mail, text message, in person, or otherwise, except as relates to matters involving the parties' minor children." On May 19, 2009, Father filed a second Petition for Order of Protection alleging that Mother physically assaulted him. An ex parte temporary restraining order was issued and, following a hearing on June 10, 2009, the trial court issued an order of protection against Mother on that same day.

In the interim, on May 21, 2009, Father filed his third post-divorce petition, a Petition to Modify Custody and for Criminal Contempt, in which he alleged that Mother was in violation of the permanent injunction, that she was guilty of four counts of willful criminal contempt of the permanent injunction and seventy-nine counts of willful criminal contempt of the Final Decree of Divorce. Father also sought to be named the primary residential parent. The trial court issued a temporary restraining order against Mother on May 22, 2009, enjoining her from informing the children of the petition or discussing it with them.

Father filed his second Petition for Criminal Contempt on August 26, 2009, in which he alleged eleven violations of the June 10, 2009 order of protection.[1] On November 19,

---

[1]The petition and Father's brief both refer to a June 20, 2009 order of protection and a June 10, 2009
(continued...)

2009, Mother filed an Answer and Counter-Petition seeking criminal contempt against Father for thirty-eight violations of the Final Decree of Divorce for, *inter alia*, his failure to exercise his parenting time. Mother also admitted and alleged a substantial and material change of circumstances, which warranted a change in the parenting plan. Father answered on December 11, 2009.

On December 4, 2009, Father filed his third Petition for Criminal Contempt alleging twenty-eight violations of the June 10, 2009 order of protection. A fourth Petition for Criminal Contempt was filed on January 5, 2010, alleging five violations of the June 10, 2009 order of protection. An order was entered by the trial court on February 5, 2010, setting a hearing for April 21, 2010, on the petitions for criminal contempt and the petitions to modify custody.

On February 17, 2010, Mother filed a motion for an emergency ex parte restraining order against Father. On February 22, 2010, Father filed a motion for immediate pendent lite possession of the minor children. On February 24, 2010, the trial judge issued an order denying Mother's motion for an emergency restraining order. In the same order, Chancellor Tom Gray, the trial judge who had presided over the case from its commencement, recused himself. Following Chancellor Gray's recusal, by order entered on March 1, 2010, the Chief Justice of the Tennessee Supreme Court designated Judge Carol Soloman to preside over this case. On the same day, Father filed a fifth Petition for Criminal Contempt alleging four violations of the June 10, 2009 order of protection.

On March 8, 2010, Mother filed a motion for Judge Soloman to be recused, alleging that Father's attorney previously represented Judge Soloman in a civil action that warranted recusal. On March 31, 2010, the motion for recusal and Father's motion for pendent lite possession of the minor children were heard. Judge Soloman ruled from the bench denying Mother's request for recusal.[2] As for Father's motion for possession of the children, the court granted Father's request and granted him immediate possession of the minor children. The trial court ordered that for a period of three weeks the children were to have "no chaos" in

---

[1](...continued)
order of protection; however, the record reveals only a June 10, 2009 order of protection so we presume that Father is referring to the June 10, 2009 order of protection at all times.

[2]The order was signed on April 15, 2010, by Judge Soloman and filed with the clerk at a later date. The court also denied Mother's request for an interlocutory appeal on the issue of recusal. It should be noted that the recusal motion was denied pursuant to the current rules; however, on January 4, 2012, the Tennessee Supreme Court announced that it had adopted a comprehensive revision to the Code of Judicial Conduct, which sets forth new ethics rules for Tennessee judges. The new Code of Judicial Conduct, which is Tennessee Supreme Court Rule 10, will take effect on July 1, 2012.

their lives and that Mother was allowed supervised visitation each Saturday for the next three weeks for three hours. Further, the trial court ordered that Mother have "limited contact with the minor children because of the incessant telephone calls she makes to the children" and that Mother was allowed only one 10-minute phone call per child every other day.

On April 16, 2010, an Agreed Order was entered wherein it was agreed that a modification of the parenting schedule was in the best interests of the children and that Father should be designated the primary residential parent. Also in the Agreed Order, Mother acknowledged receiving "notice of her rights" and pled guilty to eighteen counts of criminal contempt, for which she accepted a sentence of one hundred and eighty days in the Sumner County Jail, all of which would be served on probation subject to conditions.

The eighteen counts for which Mother pled guilty are stated in the April 16 Agreed Order. They are:

> I acknowledge my guilt to the following specifically pled acts of criminal contempt and hereby agree and voluntarily accept a sentence of 180 days in the Sumner County Jail, equaling 10 days each for the below listed eighteen (18) separate acts of criminal contempt. I acknowledge my guilt for violating the Order of Protection granted by Order entered on June 10, 2009, by contacting Mr. Baker (telephoning him) on the following four (4) separate occasions on March 1, 2010:
>
> 1. 3:30 a.m. "Jeff, I'm through fighting. I love you. I've made the biggest mistake of my life. I want you back. I'm going to drop the Order of Protection."
>
> 2. The next call was at 3:42 a.m. I state, "Please talk to me".
>
> 3. 3:43 a.m., "Why won't you talk to me?"
>
> 4. 4:00 a.m., I stated, "I'm sorry".
>
> I acknowledge my guilt for violating the Court's Order of January 1, 2009, T.C.A. §36-6-10(a); the Temporary Restraining Order entered on May 22, 2009, at 11:30 a.m. and the Order of Protection as entered on June 10, 2009, as follows:
>
> 5. On December 29, 2009, by harassing Mr. Baker and driving by him and shooting him the symbol commonly referred to as "the bird".

6. On December 28, 2009, having our minor child Lillian send Mr. Baker a text message at 3:37 p.m. which stated "Don't put Mom in jail."

7. On the evening of December 25, 2009, by informing all three of our minor children that I was going to jail on December 29, 2009, and that it was all their father's fault.

8. Telling our minor child Alexandria on December 23, 2009 that an Order of Protection had been granted against her uncle, Craig Rose and that her father was the "worse man, that he is a big, f--king, son-of-a-bitch and that she (Alexandria) can't see Craig ([her] uncle) for five months because of your father.

9. That on the evening of December 25, 2009, I made numerous phone calls to our children, Alexandria and Lillian, asking them to have their father to talk to me.

10. On July 28, 2009, at approximately 6:40 p.m., I had our minor child Lillian call Father and state to Father, "Mom wants to get back with you." "She will do anything to get back with you."

11. Prior to receiving that call, at 6:10 p.m. on July 8, 2009, I caused a text to be sent from an out of state number (412-302-5040) belonging to John Lois of Bethel Park, PA, to Mr. Baker, wherein the text informed Mr. Baker, "I guess you and Jeff won't work out. I am sorry. It is time for court. Get ready. I love my kids."

12. On Friday, July 10, 2009, I had Ellen Tate, (7 years of age), state to Father, "Mommy wanted me to tell you that she wants you back and y'all are going to get back together". Further, the minor child stated, "She wants to go to Holiday World with us tomorrow."

13. On Thursday, August 13, 2009, at 6:47 p.m. and 6:48 p.m., my harassment of Mr. Baker continued. On this date he received, via the telephone of my brother, Mr. Rose, a photo of me with B. O. Malone, texted twice to his cell phone, all at my direction.

14. On August 18, 2009, at 1:00 p.m., Mr. Baker received a call on his cell phone from my cell phone, which he did not answer. I acknowledge placing

the call.

15. On August 25, 2009, at approximately 6:00 p.m., while at our daughter Alexandria's soccer game, I approached Mr. Baker and said to Alexandria's boyfriend, who was in the presence of Mr. Baker, "Did you ride with him? Why? Why would you ride with him? All he wants to do is suck up to you." (referring to Mr. Baker). Mr. Baker walked away.

16. On August 24, 2009, at approximately 8:15 p.m., as Mr. Baker was telling our minor children goodnight after Alexandria's soccer game at Franklin Road Academy, I approached Father and said "Nice belt Fat Ass" in the presence of our children.

17. On August 25, 2009, at a soccer game at approximately 6:20 p.m., I approached Mr. Baker wherein I stated, "Talk to me. We need to talk. Why won't you talk to me? I can come about you . . . I'm at my daughter's school." Mr. Baker walked away; however, I continued to follow him.

18. At the soccer game on August 25, 2009, at approximately 7:00 p.m., while Mr. Baker was standing talking with our minor child Alexandria (16 years old) I again approached Mr. Baker.

19. On the 20th day of April 2009, the Court entered a permanent injunction against me. In criminal contempt of the permanent injunction, on the morning[s] of May 18 and 19, 2009, between the hours of 3:30 a.m. and 8:30 a.m., I telephoned Mr. Baker 18 times.

The Agreed Order listed the following terms of Mother's probation: that Mother would receive and cooperate with treatment by Dr. Scott West; that Mother would follow and adhere to the treatment by Dr. West; that Mother would be in compliance with all medications and treatments and treatment plans by Dr. West; that Mother shall attend all appointments with Dr. West; that Mother shall not violate any terms of the parenting plan or the standard parenting rights as listed in Tennessee Code Annotated § 36-6-101(a); that Mother shall not discuss the litigation or any future litigation with the minor children, that Mother would adhere to all terms of the June 10, 2009 order of protection, and that Mother would pay all of her child support on time. The Agreed Order also provided that Mother should pay Father's attorney's fees in the amount of $45,000 and that the attorney was granted a lien against the marital residence. The order further amended the Final Decree of Divorce and ordered the marital residence to be immediately listed for sale with the proceeds divided equally between the parties. Mother was ordered to pay the attorney's fees from her

share of the proceeds from the sale of the marital residence. The Agreed Order also stated that Mother's counter-petition was dismissed with prejudice. On the same day, Mother's attorney withdrew as her counsel. Mother took no appeal from the April 16, 2010 Agreed Order.

On July 20, 2010, after the April 2010 Agreed Order became a final, non-appealable judgment, Father filed a Petition to revoke Mother's probation, for an ex parte order discontinuing Mother's visitation, and for criminal contempt. The petition alleged numerous violations including that Mother was continuing to engage in harassing conduct of Father, that she failed to attend counseling appointments, and that she sent text messages to the minor children in violation of the trial court's order. On July 21, 2010, a temporary restraining order was issued against Mother enjoining her from exercising any parenting time pending further orders of the court. A hearing occurred on August 19, 2010. On August 24, 2010, the trial court signed an order finding Mother in violation of her probation and ordering her to serve the 180-day sentence in the Sumner County Jail.[3] The court also ordered Mother to pay Father's attorney's fees of $6,550. Mother filed a timely appeal from the August 24, 2010 order.

### ANALYSIS

In her appeal, Mother attempts to challenge three orders of the trial court: the Order denying Mother's motion for recusal; the April 16, 2010 Agreed Order finding, *inter alia*, Mother in contempt and suspending the sentence and placing her on probation; and the August 2010 Order revoking Mother's probation and imposing the 180-day sentence.

### I. MOTION TO RECUSE

Mother contends that Judge Carol Soloman erred in denying her March 8, 2010 motion to recuse.

Mother made one request for Judge Soloman to recuse herself from this case. As grounds for recusal, Mother asserted that Father's attorney, Scott Parsley, "previously personally represented Her Honor and the appearance of impropriety exists." Mother's motion for recusal was not supported by other grounds and no affidavits were provided, just the short statement above. At the March 31, 2010 hearing on the motion for recusal, Judge Soloman made the following statement from the bench:

---

[3]A subsequent order of the trial court was entered on August 26, 2010, permitting Mother's release from incarceration but requiring her to wear an electronic monitoring device.

Your motion for recusal. Before I was asked - - when I was asked to take this case, I called the Board of Judicial Review, talked to the Chief Attorney, Chief Judge for the Court of Judicial Review. I want to make sure that I disclose to you that Scott Parsley represented me during my divorce in 1999, I believe it was over, and then we did the property dispute afterwards. He and Ms. Palermo represented me on the divorce, and he represented me on the property dispute. It's been over for a number of years, like four, five - - three, four, a number. I checked with the Board of Professional Responsibility, the Judicial Board, and Chief Judiciary, head of the Board of Judiciary, Judge Don Ash, and he said as long as it's disclosed, of course, I could hear any case that he brought. I'm disclosing it, and I'm denying your motion for recusal.

We find it appropriate to state that we respectfully disagree with Judge Soloman's statement that "as long as it's disclosed" she could hear any case Mr. Parsley brought. We disagree with this broad statement because mere disclosure of a professional or personal relationship may not relieve a litigant of a reasonable lack of confidence that the judge could impartially consider all issues in their case. *See Olerud v. Morgan*, No. M2010–01248–COA–R3–CV, 2011 WL 607113 (Tenn. Ct. App. Feb. 18, 2011).

> Litigants . . . are entitled to the "cold neutrality of an impartial court." *Kinard v. Kinard*, 986 S.W.2d 220, 227 (Tenn. Ct. App. 1998). . . . Accordingly, judges must conduct themselves "at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary" and "shall not be swayed by partisan interests, public clamor, or fear of criticism." Tenn. Sup. Ct. R. 10, Cannon 2(A), 3(B)(2). As we said many years ago, "it is of immense importance, not only that justice be administered . . . but that [the public] shall have no sound reason for supposing that it is not administered." *In re Cameron*, 126 Tenn. 614, 151 S.W. 64, 76 (1912). If the public is to maintain confidence in the judiciary, cases must be tried by unprejudiced and unbiased judges.

> A motion to recuse should be granted if the judge has any doubt as to his or her ability to preside impartially in the case. *See State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995). However, because perception is important, recusal is also appropriate "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994). Thus, even when a judge believes that he or she can hear a case fairly and impartially, the judge should grant the motion to recuse if "the judge's impartiality might reasonably be questioned." Tenn. Sup.

Ct. R. 10, Canon 3(E)(1). Hence, *the test is ultimately an objective one since the appearance of bias is as injurious to the integrity of the judicial system as actual bias. See Alley*, 882 S.W.2d at 820.

*Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564–65 (Tenn. 2001) (emphasis added).

The foregoing notwithstanding, the only basis for recusal that is properly before this court is the assertion in the motion that Mr. Parsley "previously personally represented Her Honor and the appearance of impropriety exists." Under the Code of Judicial Conduct currently in effect, decisions concerning recusal are addressed to the discretion of the judge asked to be recused and "the judge's decision will not be reversed on appeal unless a clear abuse appears on the face of the record."[4] *See State v. Hines*, 919 S.W.2d 573, 578 (Tenn.1995). We are unable to conclude that Judge Soloman abused her discretion in denying the motion based on the ground stated in the motion and the judge's disclosure at the March 31, 2010 hearing. Thus, we find no error with the denial of the motion to recuse.

Our decision, however, shall not bar a renewed motion for recusal should bona fide grounds for recusal exist that were not known to Mother in March of 2010, when her motion was filed, or other grounds exist that may justify recusal in the future.

## II. "PRIVATE PROSECUTOR"

Mother asserts that Father's attorney acted as an "unsworn captive private prosecutor," which is grounds for setting aside the convictions and sentences for criminal contempt.

In *Wilson v. Wilson*, our Supreme Court held unequivocally that "no constitutional principle nor ethical standard automatically disqualifies a private attorney representing the beneficiary of a court order from simultaneously prosecuting a contempt action which alleges a violation of the order." *Wilson*, 984 S.W.2d 898, 905 (Tenn. 1998). The court further noted

---

[4]Effective July 1, 2012, the decision shall no longer be subject to the broad discretion of the judge asked to be recused or the very deferential abuse of discretion standard on appeal. By order entered on January 4, 2012, the Tennessee Supreme Court adopted a comprehensive revision to the Code of Judicial Conduct, which sets forth new ethics rules for Tennessee judges, an expedited appeal process, and a less deferential standard of review on appeal. The new rule, Tennessee Supreme Court Rule 10(B), provides in pertinent part that if a trial judge denies a motion for recusal, an interlocutory appeal as of right lies from the order, and "the appeal shall be decided by the appellate court on an expedited basis upon a de novo standard of review." Tenn. Sup. Ct. R. 10(B)(2.06) (2012). The Tennessee Supreme Court's Order adopting the new Code of Judicial Conduct and the new Code of Judicial Conduct is available on the Tennessee Administrative Office of the Court's website at http://www.tncourts.gov/sites/default/files/docs/rule_10_order-1-04-12.pdf.

that it was "unrealistic" to expect district attorneys to prosecute contempt actions arising from alleged violations of civil court orders. *Id*. at 903.

Mother, however, contends the Supreme Court's decision in *State v. Culbreath*, 30 S.W.3d 309 (Tenn. 2000) qualifies *Wilson*. We disagree finding the facts of *Culbreath* are unique and readily distinguishable from the facts of this case. In *Culbreath*, the Tennessee Supreme Court held that the Shelby County district attorney's office was disqualified from prosecuting defendants based upon a conflict of interest created by the use of a private attorney hired as a special prosecutor for the county, who had received substantial compensation from special interest groups. *Id*. at 316. Nothing in that opinion disturbed the Supreme Court's previous ruling in *Wilson* and, despite Mother's unhappiness with the court's holding in *Wilson*, it remains good law.

### III. MANDATORY PROCEDURES FOR GUILTY PLEAS TO CRIMINAL CONTEMPT

Mother contends her guilty pleas in the April 16, 2010 Agreed Order (hereinafter "the Agreed Guilty Plea Order") to eighteen counts of criminal contempt were procured pursuant to a procedure that is constitutionally infirm; therefore, her guilty pleas are void. As a further consequence, she contends the revocation of her probation and imposition of the sentence in the August 2010 order is unenforceable.

In *State v. Mackey* our Supreme Court outlined the mandatory procedures that a trial court shall follow when accepting a guilty plea in a criminal case. These procedures are in accordance with the standards set forth by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 239 (1969) and enshrined in Tennessee Rule of Criminal Procedure 11(b). *See State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977). When considering whether to accept a guilty plea, *Mackey*, *Boykin*, and Tennessee Rule of Criminal Procedure 11(b) require the trial judge to adhere to the following procedures:

> (1) ADVISING AND QUESTIONING THE DEFENDANT. Before accepting a guilty plea or nolo contendere plea, the court shall address the defendant personally in open court, and inform the defendant of, and determine that he or she understands, the following:
>
> > (A) The nature of the charge to which the plea is offered;
> > (B) the maximum possible penalty and any mandatory minimum penalty;
> > (C) if the defendant is not represented by an attorney, the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the

proceeding;

(D) the right to plead not guilty or, having already so pleaded, to persist in that plea;

(E) the right to a jury trial;

(F) the right to confront and cross-examine adverse witnesses;

(G) the right to be protected from compelled self-incrimination;

(H) if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence;

(I) if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offence to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury; and

(J) if the defendant pleads guilty or nolo contendere, it may have an effect upon the defendant's immigration or naturalization status, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the immigration consequences of a plea.

(2) INSURING THAT PLEA IS VOLUNTARY. Before accepting a plea of guilty or nolo contendere, the court shall address the defendant personally in open court and determine that the plea is voluntary and is not the result of force, threats, or promises (other than promises in a plea agreement). The court shall also inquire whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the district attorney general and the defendant or the defendant's attorney.

(3) DETERMINING FACTUAL BASIS FOR PLEA. Before entering judgment on a guilty plea, the court shall determine that there is a factual basis for the plea.

Tenn. R. Crim. Proc. 11(b)(1)-(3).

As the rule expressly mandates by the repeated use of the word "shall" in each subsection, *before* "accepting a guilty plea" and *before* "entering judgment on a guilty plea," the trial court is required to "*address the defendant personally in open court*" and engage in the colloquy with the defendant and make the determinations required by the rule. Tenn. R. Crim. Proc. 11(b)(1)-(2) (emphasis added). Furthermore, the rule expressly requires the trial court to make a determination that there is a factual basis for the plea before entering

judgment on a guilty plea. Tenn. R. Crim. Proc. 11(b)(3). In addition to the procedures outlined in Rule 11, "Tennessee law requires a trial court to inform a defendant and ensure that he or she understands that different or additional punishment may result from his or her guilty plea due to the defendant's prior convictions or other factors and that the resulting conviction may be used to enhance punishment for subsequent convictions." *Lane v. State*, 316 S.W.3d 555, 564 (Tenn. 2010) (citing *Howell v. State*, 185 S.W.3d 319, 331 (Tenn. 2006)). Accordingly, a trial judge fails to comply with *Mackey* and *Boykin* if the judge approves and signs an agreed order wherein a party pleads guilty to a crime without first (before accepting the guilty plea) addressing the defendant personally, in open court, and engaging in the colloquy and making the determinations as expressly required by Rule 11(b). *See State v. Ream*, No. M2007-00264-COA-R3-JV, 2008 WL 4367457 (Tenn. Ct. App. 2008).

A trial court's failure to comply fully with Rule 11(b) was the dispositive issue in *State v. Ream*. After the appellant in *Ream* pled guilty to criminal contempt for violation of a court order in the juvenile court and received a four-day sentence, she appealed contending that the sentence was excessive. *Id*. at \*1. The issue on appeal in *Ream* was whether the procedure by which the juvenile court accepted the guilty plea, specifically the sufficiency of the judge's colloquy with the defendant in open court, was in contravention of constitutional standards. *Id.* The State asserted in *Ream* that a criminal contempt proceeding is not an ordinary criminal case; thus, the defendant is not entitled to the same constitutional safeguards. As the State explained in its appellate brief:

> In this case, the juvenile court's colloquy with Ms. Ream and her counsel, printed above, did not substantially comply with the procedures required by *Mackey* and enshrined in [Tennessee Rule of Criminal Procedure 11]. Thus, if this were an ordinary criminal case, the juvenile court's acceptance of the guilty plea would constitute plain error requiring reversal of the plea.

*Id*. at \*3-4 (footnotes omitted).

This court rejected the State's "this is not an ordinary criminal case" argument, noting that this court and the Court of Criminal Appeals "have specifically held that criminal contempt is a crime in the 'ordinary sense of the word.'" *Id*. (citing *Crabtree v. Crabtree*, 716 S.W.2d 923, 925 (Tenn. Ct. App. 1985) (citing *Strunk v. Lewis Coal Co.*, 547 S.W.2d 252 (Tenn. Crim. App. 1976))).

> Criminal contempts are also crimes in the ordinary sense of the word, and one charged with criminal contempt is entitled to constitutional rights which attach to any criminal charge, e.g., the presumption of innocence and the right to

require guilt to be shown beyond a reasonable doubt. *Strunk v. Lewis Coal Co.*, 547 S.W.2d 252 (Tenn. Crim. App. 1976).

*Id.* at *4 (quoting *Crabtree*, 716 S.W.2d at 925).

In *Ream* the court also noted that the Supreme Court of the United States followed the same reasoning, stating:

> "Criminal contempt is a crime in the ordinary sense," *Bloom v. Illinois*, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522 (1968), and "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings," *Hicks v. Feiock*, 48 U.S. 624, 632, 108 S.Ct. 1423, 1429-1430, 99 L.Ed.2d 721 (1988).

*Id.* (quoting *International Union v. Bagwell*, 512 U.S. 824, 826 (1994); citing *Robinson v. Fulliton*, 140 S.W.3d 304, 312 (Tenn. Ct. App. 2003)).

*Ream* also relied upon our Supreme Court's decision in *State v. McClintock*, 732 S.W.2d 268 (Tenn. 1987), in reaching its determination that these mandatory procedures also apply to guilty pleas for criminal contempt. In *McClintock*, the court held that *Mackey* standards apply not only to guilty pleas in general sessions court but also to "*any* court accepting a guilty plea." *Id.* (quoting *McClintock*, 732 S.W.2d at 273) (emphasis in original). Based upon the foregoing authorities and the undisputed fact that the juvenile court did not substantially comply with the procedures required by *Mackey* and Tennessee Rule of Criminal Procedure 11, Ms. Ream's conviction for criminal contempt was vacated.[5] *Id.*

Accordingly, in criminal contempt proceedings, the trial judge *shall* comply with Rule 11(b) by addressing the defendant *in person, in open court*, engaging the defendant in the requisite dialogue and then making the individualized determinations the rule requires *before* accepting any guilty plea, including without limitation, making the determination that the proposed sentence is appropriate under the circumstances. *See* Tenn. R. Crim. P. 11(b).

---

[5]Ms. Ream's case was remanded to the juvenile court for further proceedings consistent with the opinion with the notation that "this opinion would preclude the juvenile judge from the imposition of a lesser sentence if the appellant should plead guilty or be found guilty of criminal contempt." *Ream*, 2008 WL 4367457, at *4.

IV. MOTHER'S COLLATERAL ATTACK ON THE AGREED GUILTY PLEA ORDER

Mother perfected a timely appeal of the August 2010 order wherein the trial court revoked her probation and imposed the 180-day sentence; however, she did not perfect a timely appeal from the Agreed Guilty Plea Order wherein she pled guilty to eighteen counts of criminal contempt. Therefore, Mother lost the right to a direct appeal of the Agreed Guilty Plea Order and her challenge in this appeal to the Agreed Guilty Plea Order constitutes a collateral attack on that order. *See Cook v. Cook*, No. M2005-02725-COA- R3-CV, 2007 WL 295238, at *3 (Tenn. Ct. App. Feb. 1, 2007) (citing *Gentry v. Gentry*, 924 S.W.2d 678, 681 (Tenn. 1996) (stating "Mother's petition constitutes a collateral attack against the 2001 Decree because this is not a direct appeal of the 2001 Decree.")).

A challenge to a final judgment by means other than a direct appeal is known as a "collateral attack." *See Turner v. Bell*, 279 S.W.2d 71, 75 (Tenn. 1955); *see also Jordan v. Jordan*, 239 S.W. 423, 445 (Tenn. 1922). As we observed in *Cook*, if the appeal contemplates relief other than directly overturning a final judgment – although that may be important or necessary to its success – the attack upon the final judgment is collateral. *Cook*, 2007 WL 295238, at *3 (citing *Turner*, 279 S.W.2d at 75; *Jordan*, 239 S.W. at 445).

When an appellant collaterally attacks a final, non-appealable judgment as void, the few grounds that have been recognized for such an attack are that the trial court lacked subject matter jurisdiction, that the court ruled on an issue "wholly outside of the pleadings," or that the court lacked personal jurisdiction over the complaining party. *See Cook*, 2007 WL 295238, at *3 (citing *Gentry*, 924 S.W.2d at 681) (stating "where the court has general jurisdiction of the subject matter and jurisdiction over the parties, and where the court's decree of divorce is not 'wholly outside of the pleadings,' a divorce decree will not be deemed void."). Mother does not challenge the April Agreed Guilty Plea Order on these grounds; she challenges the validity of the guilty plea contained therein and the 180-day sentence on constitutional grounds, specifically the *Boykin* criteria.

The dilemma this presents is there is no precedent for a collateral attack of a guilty plea to criminal contempt in the unique fashion presented here. As previously discussed, Mother did not perfect a direct appeal to raise a *Boykin* challenge to the Agreed Guilty Plea Order. Whether she was entitled to seek relief from the Agreed Guilty Plea Order under Tennessee Rule of Civil Procedure 60.02 by timely filing the appropriate motion in the trial court is not before this court. Moreover, the common procedure to challenge the constitutional infirmities of a criminal conviction or sentence after the judgment becomes final and non-appealable is by timely filing a petition for post-conviction relief pursuant to

Tennessee Code Annotated § 40-30-101, *et seq.*[6] *See State v Wilson*, 31 S.W.3d 189, 193 (Tenn. 2000); Tenn. R. Crim. P. 37(b)(2); Tenn. R. App. P. 3(b). It appears that Mother filed such a petition in a separate proceeding, however, post-conviction relief is not at issue here.[7]

Based upon a thorough review of the record and statements by the parties in the briefs, one might infer that Mother's guilty plea was not obtained pursuant to *Boykin* or Tennessee Rule of Criminal Procedure 11(b); however, that fact, if true, is not apparent on the face of the record. Accordingly, the Agreed Guilty Plea Order is not void ab initio and, therefore, Mother's collateral attack on the Agreed Guilty Plea Order must fail.[9]

## V. MOTHER'S DIRECT APPEAL OF THE SENTENCE

Unlike Mother's challenge to the Agreed Guilty Plea Order, she has timely perfected a direct appeal of the August 2010 order by which she was sentenced to 180 days of confinement for violating the terms of probation. *See* Tenn. Code Ann. § 4-35-115(c) (stating "the finding concerning the imposition of consecutive or concurrent sentences is appealable by either party.").

---

[6]Another means of challenging a conviction or sentence is by writ of habeas corpus; however, "the remedy provided by a writ of habeas corpus is limited in scope and may only be invoked where the judgment is void or the petitioner's term of imprisonment has expired." *Johnson v. Carlton*, No. E2003-03010-CCA-R3-CD, 2004 WL 1655756, at \*5 (Tenn. Crim. App. July 22, 2004) (citing *State v. Ritchie*, 20 S.W.3d 624, 629 (Tenn. 2000); *State v. Davenport*, 980 S.W.2d 407, 409 (Tenn. Crim. App. 1998)). Further, a habeas corpus court may summarily dismiss a petition without the appointment of a lawyer and without an evidentiary hearing if there is nothing on the face of the judgment or within pertinent documents from the record of underlying proceedings attached to the petition, which indicate that the convictions addressed therein are void. *Summers v. State*, 212 S.W.3d 251, 261 (Tenn. 2007).

[7]Mother filed a supplemental brief in which she states that she is seeking post-conviction relief in another court pursuant to Tennessee Code Annotated § 40-30-101 *et seq*. That case, *Tracy Rose vs. State of Tennessee*, is now on appeal before the Court of Criminal Appeals in Case Number M2011-01381-CCA-R3-PC and is set for argument on March 21, 2012.

[9]A void judgment, as distinguished from a voidable judgment, is one that is facially invalid. *Summers v. State*, 212 S.W.3d 251, 256 (Tenn. 2007). "A decree not prima facie void is valid and binding, until it is either (1) reversed . . . ; or (2) is set aside on a complaint filed to impeach it." *Gentry*, 924 S.W.2d at 680 (quoting William H. Inman, *Gibson's Suits in Chancery* § 228 at 219–20 (7th ed.1988)); *see Dykes v. Compton*, 978 S.W.2d 528, 529 (Tenn. 1998) (stating a void judgment is one that is facially invalid because the court did not have the statutory authority to render such judgment, while a voidable judgment is one which is facially valid and requires proof beyond the face of the record or judgment to demonstrate its voidableness).

As we begin our analysis of the sentence imposed it is important to recognize that criminal contempt is used to "preserve the power and vindicate the dignity and authority of the law" as well as to preserve the court "as an organ of society." *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996); *see also Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). Criminal contempt proceedings "'in a very true sense raise an issue between the public and the accused.'" *Id.* Conversely, criminal contempt is not to be used to benefit the contemnor's adversary in a civil proceeding; that is the purpose and function of civil contempt. *Overnite Transp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 510 (Tenn. 2005)(stating that a civil contempt action is generally brought to enforce private rights). "Punishment for civil contempt is designed to coerce compliance with the court's order and is imposed at the insistence and for the benefit of the private party who has suffered a violation of rights." *Doe v. Bd. of Prof'l Responsibility of Supreme Court of Tenn.*, 104 S.W.3d 465, 473-474 (Tenn. 2003).

When the defendant is found guilty of criminal contempt, the trial court has the discretion to impose a sentence and to require that the defendant serve the sentence imposed or, alternatively, to place the contemnor on probation subject to reasonable terms and conditions. If the defendant was placed on probation and thereafter violates conditions of his or her probation, the trial court has the authority to revoke the suspension of the sentence and, among other alternatives, order the execution of the original sentence. *State v. Beard*, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005). Alternatively, the court has *"the discretionary authority upon the revocation of probation to impose something less than the original sentence, depending upon the circumstances of the case." Id*. (citing *State v. Troy McLemore*, No. 03C01–9709–CC–00406, 1998 WL 422339 (Tenn. Crim. App. July 28, 1998); *State v. Marty Miller*, No. 03C01–9602–CC–00056, 1997 WL 90638 (Tenn. Crim. App. Mar. 4, 1997); *State v. Melvin Griffin*, No. 01C01–9503–CC –00090, 1995 WL 679112 (Tenn. Crim. App. Nov. 16, 1995)).

The determination of the appropriate consequence of such a violation embodies a separate exercise of discretion. *State v. McCoy*, No. M2011–00006–CCA–R3–CD, 2011 WL 6916227 (Tenn. Crim. App. Dec. 28, 2011) (citing *State v. Hunter*, 1 S.W.3d 643, 647 (Tenn. 1999); *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007)). Therefore, we shall review the trial court's order requiring Mother to serve all 180 days of her original sentence pursuant to the abuse of discretion standard.

The record before us reveals that Mother has been emotionally challenged by the stresses arising from the divorce and the parenting plan. Nevertheless, it is also readily apparent that Mother has acted most inappropriately and, for purposes of this appeal, she violated some of the terms of her probationary sentence, specifically, she communicated with Father in a manner and at times that violated the terms of probation, she failed to attend

mental health counseling appointments as required, and she sent text messages to the minor children at times that violated the terms of her probation.

The fact that stands out first and foremost in this appeal is that Mother is in desperate need of mental health counseling much more than she needs to spend 180 days in jail. While the court's authority must be vindicated, and a period of incarceration is indeed appropriate, mental health counseling is needed to change Mother's irrational conduct that cannot be tolerated and to cause her to comply with the terms of her probationary sentence. Therefore, Mother should be required to serve a portion of her original sentence for her violations to change her mind-set to cause her to comply with the terms of probation by way of attending counseling as ordered by the court.

The overall length of Mother's sentence must be "justly deserved in relation to the seriousness of the offense[s]," and "no greater than that deserved" under the circumstances," *In re Sneed*, 302 S.W.3d 825, 828 (Tenn. 2010), and if we determine that a sentence is excessive, it is incumbent upon this court to reduce or otherwise modify an excessive sentence for contempt. *See Robinson v. Air Draulics Engineering Company*, 377 S.W.2d 908, (Tenn. 1964); *Barrowman v. State ex rel. Evans*, 381 S.W.2d 251, 253-54 (Tenn. 1964); *Thompson v. State*, 241 S.W.2d 404 (Tenn. 1951); *Metcalf v. Eastman*, 228 S.W.2d 490 (Tenn. 1950); *see also Hundhausen v. U. S. Marine Fire Ins. Co.*, 52 Tenn. 702 (Tenn. 1871) (wherein the court held that "if the punishment seems to be excessive this Court on appeal has jurisdiction to revise and reduce the sentence.").

To be clear, we do not condone Mother's conduct and agree with the trial court that she violated the terms of her probation; however, Mother's acts and omissions while on probation do not justify a 180-day sentence. Considering the unique facts of this case, we find an effective sentence of 180 days is clearly excessive in relation to Mother's acts and omissions while on probation and modify the sentence to provide for a total period of confinement of thirty (30) days.

## VI. IN CONCLUSION

For completeness and clarity, and to minimize confusion to the parties and the trial court, despite Mother's other numerous contentions, our decision does not disturb the April 16, 2010 Agreed Order. Further, because we granted substantial relief to Mother and yet affirmed other aspects which favor Father, we decline to award attorney's fees to either party. Thus, each party shall be responsible for his and her attorney's fees and costs incurred on appeal.

The judgment of the trial court is affirmed in part, modified in part, and this matter is remanded with costs of appeal assessed against the parties equally.

_____
FRANK G. CLEMENT, JR., JUDGE